Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
22 Battery Street, Suite 888
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Proposed Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case No. 16-31325 HLB |
| | ) | Chapter 11 |
| WRAP MEDIA, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re | ) | Case No. 16-31326 HLB |
| | ) | Chapter 11 |
| WRAP MEDIA, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | DATE: December 14, 2016 |
| ☐ Affects LLC | ) | TIME: 2:00 p.m. |
| ☐ Affects Inc. | ) | JUDGE: Hon. Hannah L. Blumenstiel |
| ☒ Affects BOTH DEBTORS | ) | COURT: 19 |
| | ) | |

## REDLINES REGARDING BORROWING MOTION

At the hearing on December 14, 2016, the Lender agreed to certain modifications with respect to the DIP Lending Facility.

Attached hereto as Exhibit A is a redline identifying modifications to the form of Interim Order approving the DIP Financing, previously submitted as Exhibit C to Dkt #18; a clean final of that revised Interim Order is uploaded herewith.

The Lender also made certain modifications to the Loan Agreement; Exhibit B to Dkt #18. Attached hereto as Exhibit B is a redline identifying modifications to the Loan Agreement; attached hereto as Exhibit C is a clean final of that Loan Agreement.

Respectfully submitted,

DATED:  December 19, 2016                ST. JAMES LAW, P.C.


By:   /s/  *Michael St. James*   .
                Michael St. James
Proposed Counsel for Debtors

# Exhibit

# A

Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Proposed Counsel for Debtors

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>WRAP MEDIA, LLC<br><br>            Debtor.<br>_____ | Case No. 16-31325 HLB<br>Chapter 11 |
| In re<br><br>WRAP MEDIA, INC.<br><br>            Debtor.<br>_____ | Case No. 16-31326 HLB<br>Chapter 11 |
| ☐ Affects LLC<br>☐ Affects Inc.<br>☒ Affects BOTH DEBTORS | Respondent: Silicon Valley Bank |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, AND (IV) SCHEDULING A FINAL HEARING ON THE DEBTORS' MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS**

      This matter is before the Court on the motion (the "Motion") filed by the above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Case") requesting entry of an interim order (this "Interim Order"), and following a final hearing, a final order (the "Final Order"), among other things:

1

(1)     Authorizing and approving, pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for Debtors, as borrower, to obtain postpetition financing up to the principal amount of $3,000,000 (the "DIP Facility"), of which up to the principal amount of $350,000 will be available under this Interim Order, from Wrap Media Holdings, LLC or its designee, as lead lender and lender agent ("Lead Lender" and "Lender Agent"), and other lenders to be identified (together with Lead Lender, "Lender"), pursuant to the terms of the DIP Loan Agreement[1] (as defined below), to:  (A) fund general operating needs of the Debtors pursuant to a Budget, (B)  pay certain expenses of administration of the Case, and (C) pay amounts owed to Lender under the DIP Loan Agreement (obligations under the DIP Facility and under this Interim Order, including, without limitation, principal, interest, fees and expenses, and other obligations and amounts due from time to time under the DIP Loan Agreement shall be referred to hereinafter collectively as the "Postpetition Indebtedness");

(2)     Authorizing and empowering the Debtors to execute and enter into the DIP Loan Agreement and to perform such other and further acts as may be required in connection with the DIP Loan Agreement;

(3)     providing, pursuant to section 364(c)  of the Bankruptcy Code, that the obligations under the DIP Facility:

a.     shall have priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, or 1114 of the Bankruptcy Code or otherwise, which allowed superpriority claims of Lender (the "DIP Superpriority Claims") shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors as provided herein, provided, however, that the DIP Superpriority Claims shall be subject to the Carve-Out (as defined below);

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Loan Agreement (as defined below).

1

b. shall be secured by a valid, binding, continuing, enforceable, fully-perfected senior lien on, and security interest in, the "Senior Collateral" consisting of (a) the Intellectual Property (as defined in the DIP Loan Agreement), subject to the SVB Replacement Lien, (b) the Control Account (as defined in the DIP Loan Agreement), and (c) any other prepetition and postpetition property of the Debtors, whether now existing or hereafter acquired, that is not subject to a valid, perfected and unavoidable lien in existence immediately prior to the Petition Date, in each case subject to the Carve-Out;

c. shall be secured by a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in, the "Junior Collateral" consisting of (a) any Collateral that is subject to a valid, perfected and unavoidable lien under the SVB Indebtedness (as defined in the DIP Loan Agreement), and (b) any other prepetition and postpetition property of the Debtors, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date (as defined below), or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, which security interests and liens in favor of Lender shall be junior to such valid, perfected and unavoidable liens, in each case subject to the Carve-Out (the "DIP Collateral" consists of the Senior Collateral and the Junior Collateral);

d. authorizing the Debtors pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code to use Cash Collateral (as defined under section 363 of the Bankruptcy Code) in which Lender asserts an interest as a result of the DIP Facility;[2] and

(4) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") before this Court to consider entry of the Final Order approving the DIP Facility and authorizing the use of Cash Collateral, all on a final basis, as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the interim hearing on the Motion before this Court to consider entry of this Interim Order (the "Interim Hearing") having been provided by the Debtors, and the

---

[2] Use of Cash Collateral in which Silicon Valley Bank asserts an interest will be addressed by separate order.

DOCS_SF:92784.4 DOCS_SF:92784.5 42335/001

Case: 16-31325    Doc# 33    Filed: 12/19/16    Entered: 12/19/16 11:12:40    Page 6 of 78

Interim Hearing having been held on, December ____ 14, 2016], and the Court having considered of all the pleadings filed with this Court, including any objections to the relief requested in the Motion that were not withdrawn or resolved at or prior to the hearing; and upon the record made by the Debtors at the Interim Hearing and the ~~Declaration of [_____]~~ Declarations of Eric Greenberg and Douglas Abrams in support of the Motion, and after due deliberation and consideration and good and sufficient cause appearing therefore;

**IT IS HEREBY FOUND**:

A. On December 10, 2016 (the "Petition Date"), the Debtors commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. No request for the appointment of a trustee or examiner has been made in this Case. No official committee of unsecured creditors has yet been appointed or designated by the U.S. Trustee's office.

C. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. The Debtors' business has an immediate need for financing under the DIP Facility and use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors and to the success of the Case. Without such credit and use of Cash Collateral, the Debtors would not be able to operate their business and the Debtors' estates would be irreparably harmed.

~~DOCS_SF:92781.4~~ DOCS_SF:92784.5 43335.001

Case: 16-31325    Doc# 33    Filed: 12/19/16    Entered: 12/19/16 11:12:40    Page 7 of 78

E. The Debtors are unable to obtain sufficient financing from sources other than Lender on terms more favorable than under the DIP Loan Agreement and all the documents and instruments delivered pursuant thereto or in connection therewith. The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without providing Lender with the benefit of the DIP Superpriority Claims and the DIP Liens as provided herein and in the DIP Loan Agreement.

F. Pending entry of the Final Order, Lender is willing to provide financing to the Debtors and/or consent to the use of Cash Collateral and other Collateral by the Debtors subject to (i) the entry of this Interim Order, (ii) the terms and conditions of the DIP Loan Agreement, and (iii) findings by the Court that such interim postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such interim financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Liens, DIP Superpriority Claims, and the other protections granted pursuant to this Interim Order and the DIP Loan Agreement with respect to such interim financing and use of Cash Collateral will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Without limiting the foregoing, any advances made to the Debtors under the DIP Loan Agreement after entry of this Interim Order and prior to entry of the Final Order shall be entitled to the protections provided by section 364(e) of the Bankruptcy Code. Lender has acted in good faith in, as applicable, negotiating, consenting to and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral on an interim basis as contemplated by this Interim Order and the other DIP Loan Agreement, and the reliance by Lender on the assurances referred to above is in good faith.

G. Telephonic, facsimile notice or overnight mail notice of the Interim Hearing and the proposed entry of this Interim Order has been provided to (a) the twenty (20) largest creditors listed in the Debtors' list of creditors (excluding insiders), (b) the Office of the United States Trustee for the Central District of California (the "U.S. Trustee"), (c) Silicon Valley Bank ("SVB") and any other secured party, (d) the Debtors' landlord, and (e) any other party that has filed

4

a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules and Local Bankruptcy Rules. Under all the exigent circumstances, the requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rule 4001.

H.     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this Interim Order, the Debtors' business, properties and estates will be immediately and irreparably harmed.

I.     The ability of the Debtors to finance their operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, and use of Cash Collateral are in the best interests of the Debtors and their creditors and estates.

J.     Based upon the record presented by the Debtors to this Court:  (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors and Lender, and any loans, credit, use of Cash Collateral or other financial accommodations set forth in this Interim Order shall be deemed to have been extended, issued, made, or consented to, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.     <u>Disposition</u>.  The Motion is granted as set forth in this Interim Order.  Any objections that have not previously been withdrawn or resolved at the hearing are hereby overruled. This Interim Order shall immediately become effective upon its entry.

2.     <u>Authorization to Borrow Under the DIP Facility</u>.  As of the date hereof, Debtors and Lender are deemed to have executed and delivered all documents comprising that certain *Secured Super-Priority Debtors-in-Possession Loan Agreement* (as amended or supplemented, the "<u>DIP Loan Agreement</u>"), and the requirements of the DIP Loan Agreement shall be binding on the Debtors.  Provided that the Debtors are not in default under the terms of this

DOCS_SF:92781.4 DOCS_SF:92784.5 42335/001

Interim Order or the DIP Loan Agreement, the Debtors are authorized to borrow under the DIP Facility from Lender, in accordance with the terms and conditions of the DIP Loan Agreement and in the amounts and at the times (subject to applicable variances) set forth in the budget attached hereto as **Exhibit A** (the "DIP Budget"), up to $350,000 in an aggregate principal amount of advances, and to use amounts borrowed under the DIP Facility to fund the Debtors' working capital, administrative expenses, and other general corporate needs pending the Final Hearing in accordance with the terms of the DIP Loan Agreement and this Interim Order.

3.　　DIP Superpriority Claims. For the Postpetition Indebtedness, Lender is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the payment of the Carve-Out, the allowed DIP Superpriority Claims, which claims shall be payable from and have recourse to, in addition to the DIP Collateral, any unencumbered prepetition or postpetition property of the Debtors whether now existing or hereafter acquired. The DIP Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance other than as provided herein, for all purposes in the Case and any successor case.

4.　　DIP Liens. As security for the repayment of the Postpetition Indebtedness arising under the DIP Loan Agreement, pursuant to sections 364(c)(2) and (c)(3) of the Bankruptcy Code, Lender is hereby granted the liens on the DIP Collateral (the "DIP Liens"). The DIP Liens are valid, binding, enforceable and fully perfected as of the date hereof.

5.　　Carve-Out.

(a)　　As used in this Interim Order, the term "Carve-Out" shall mean a carve-out for (i) allowed, accrued, but unpaid professional fees and expenses of the Debtors and any official committee of unsecured creditors appointed in the Case, in each case as set forth in the DIP Budget (on a cumulative basis) incurred prior to an Event of Default (as defined in the DIP Loan Agreement) not otherwise cured by the Debtors or waived by Lender, (ii) allowed, accrued, but unpaid professional fees and expenses of the Debtors or any subsequently appointed chapter 7 trustee incurred in the Case after an Event of Default (that is not waived or cured) not to exceed an amount equal to $~~10,000~~35,000, and (iii) the payment of fees pursuant to 28 U.S.C. § 1930; provided

that the Carve-Out, any Cash Collateral and any proceeds of the DIP Facility may not be used to prosecute, contest or otherwise challenge the validity, perfection, priority, extent, or enforceability of the DIP Facility, or the liens securing the DIP Facility, or any claims against Lender in its capacity as such.

(b)     Notwithstanding anything herein to the contrary, no Collateral, Cash Collateral, amounts borrowed under the DIP Loan Agreement, proceeds of any of the foregoing, or any portion of the Carve-Out shall include, apply to, or be available for, any fees or expenses incurred by any party, including the Debtors or any committee, in connection with (A) the initiation or prosecution of (or soliciting or encouraging other parties to assert) any claims, causes of action, adversary proceedings, or other litigation against Lender in its capacity as such, or (B) any avoidance actions against Lender in its capacity as such.  The foregoing shall not be construed as consent to the allowance of any estate professional fees and shall not affect the right of the Debtors, Lender, or other parties in interest to object to the allowance and payment of any estate professional fees.  Payment of any portion of the Carve-Out shall not, and shall not be deemed to, reduce any of the Debtors' obligations owed to Lender.

6.     Adequate Protection to SVB.  Solely to the extent of any diminution in the value of the interests of SVB in the Junior Collateral, SVB shall have, pursuant to sections 361 and 363(e) of the Bankruptcy Code, an additional security interest and lien in the Intellectual Property (the "SVB Replacement Lien"), which lien shall (a) be senior to the DIP Liens with respect to the Intellectual Property (but shall be junior to the DIP Liens with respect to the remaining Senior Collateral, including the Control Account), and (b) be junior and subordinate to the Carve Out.

7.     Section 506(c) and 552(b) Waivers.  Effective upon entry of a Final Order providing for such relief, with the exception of the Carve-Out and except as otherwise permitted by the DIP Facility or this Interim Order, neither the DIP Collateral nor Lender, nor any of its claims, shall be subject to any costs or expenses of administration that have been or may be incurred at any time, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, by the Debtors or any other party in interest without the prior written consent of Lender, and no such consent shall be implied from any action, inaction, or acquiescence by any party, including, but not limited to,

7

funding of the Debtors' ongoing operations by Lenders.  Effective upon entry of a Final Order providing for such relief, the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived with respect to the DIP Collateral.  Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

8.  <u>Authorization to Use Cash Collateral.</u>  Upon entry of this Interim Order and during the term hereof, the Debtors are authorized pursuant to sections 105, 361, 363, 541 and 553 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, to use Cash Collateral in which Lender maintains an interest in accordance with the DIP Budget.  The Debtors' authority to use Cash Collateral, including any proceeds of the DIP Loan Agreement contained in the Collateral Account or otherwise, shall cease immediately upon the giving of notice by the Lender of the occurrence of an Event of Default (as defined in the DIP Loan Agreement), except as may otherwise be ordered by the Bankruptcy Court.

9.  <u>Reimbursement of Fees and Expenses</u>.  Upon entry of this Interim Order, the Debtors shall reimburse Lender Agent in accordance with the terms of the DIP Loan Agreement for its reasonable costs and fees, provided however, that the Debtors, upon receipt of invoices from Lender Agent, shall provide copies of the same to the U.S. Trustee and counsel for any committee. None of such costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; <u>provided</u>, <u>however</u>, that the Court shall have jurisdiction to determine any dispute regarding the reasonableness of any such costs, fees, charges and expenses.  The payment of such fees and costs in amounts in excess of those set forth in the DIP Budget will not result in a breach of the DIP Loan Agreement.

10.  <u>Additional Perfection Measures</u>.  Lender shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Loan Agreement and this Interim Order (including, without limitation, taking

8

possession of or obtaining control over any of the DIP Collateral, or taking any action to have security interests or liens noted on certificates of title or similar documents). Notwithstanding the foregoing, Lender may, in its discretion, file this Interim Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security interests, and mortgages, without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, and all such documents shall be deemed to have been filed or recorded or other action taken on the Petition Date, with the priorities set forth herein; provided, that the failure of Lender to file any such financing statement, mortgage, deed of trust, notice of lien or other instrument, or to otherwise confirm perfection of such liens, security interests or mortgages or make any other such request shall not affect either the perfection or priority of the DIP Liens.

11. <u>Remedies Upon Event of Default</u>.

(a) <u>Acceleration</u>. After the occurrence and continuance of an Event of Default (as defined in the DIP Loan Agreement) and upon five (5) Business Days' written notice following such Event of Default from Lender to the Debtors, if the Debtors have not within such five (5) day period either (A) cured any such Event of Default; or (B) obtained an order from the Court excusing Debtors' performance or otherwise determining that no such Event of Default has occurred, Lender shall have the right to declare the entire unpaid principal amount of any outstanding advances under the DIP Facility, together with all accrued but unpaid interest and any unpaid fees and expenses incurred by Lender, immediately due and payable. The Debtors waive presentment, protest, demand, notice of dishonor and all other requirements of any kind. Lender's failure to exercise any right or remedy under the DIP Facility or acceptance of partial or delinquent payments, shall not be a waiver of any obligation of the Debtors or right of Lender, or constitute Lender's waiver of any other default subsequently occurring.

(b) <u>Automatic Stay</u>. After the occurrence and continuance of an Event of Default (as defined in the DIP Loan Agreement) and upon seven (7) Business Days' written notice following such Event of Default from Lender to the Debtors, if the Debtors have not within such seven (7) day period otherwise obtained an order from the Court maintaining the automatic stay, the

automatic stay provided in Section 362 of the Bankruptcy Code shall be deemed modified and Lender shall have the right to exercise any of the remedies under the DIP Facility loan documents, including any rights and remedies provided herein and the right to realize on the DIP Collateral without further relief or order of this Court.

(c)     Binding Effect.  The provisions of this Interim Order shall be binding upon and inure to the benefit of Lender, the Debtors and their respective successors and assigns, including any trustee hereafter appointed for the estates of either of the Debtors, whether in the Case or any successor case, including the conversion of the Case to a case under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Interim Order.

12.     Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in the Case (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code), (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting the Case to a chapter 7 case unless permitted under the DIP Loan Agreement, or (d) to the maximum extent permitted by law, dismissing the Case unless permitted under the DIP Loan Agreement, and notwithstanding the entry of any such order, the terms and provisions of this Interim Order shall continue in full force and effect, and the DIP Superpriority Claims and DIP Liens granted pursuant to this Interim Order and/or the DIP Loan Agreement shall continue in full force and effect and shall maintain their priority as provided by this Interim Order and the DIP Loan Agreement to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash or otherwise addressed pursuant to a confirmed plan.

13.     Credit Bid.  The Lead Lender's ability to exercise its rights to credit bid the Postpetition Indebtedness authorized by this Interim Order, either pursuant to a sale under Section 363 of the Bankruptcy Code or pursuant to a plan of liquidation for the Debtors, shall be subject to further order of the Court.  The foregoing (a) shall be subject to reconsideration or modification at the Final Hearing, and (b) shall not diminish or affect the validity, priority, perfection or enforceability of the DIP Liens authorized by this Interim Order.

10

14. 13.**Findings of Fact and Conclusions of Law**. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.

15. 14.**Controlling Effect of Order**. To the extent any provision of this Interim Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, or the DIP Loan Agreement, the provisions of this Interim Order shall control.

16. 15.**Final Hearing**. The Final Hearing shall be heard before this Court on January ___18, 2017 at ___:___0 ___.m, at 1:00 p.m. (PST) at the United States Bankruptcy Court for the Northern District of California, Courtroom 19 on the 16th Floor of the Federal Building, 450 Golden Gate Avenue, San Francisco, California.

17. 16.**Adequate Notice**. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2). Any party in interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with the Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than [_____]January 11, 2017, at 5:00 p.m. (**PDT**PST).

Dated: _____, 2016

_____
Honorable Hannah L. Blumenstiel
United States Bankruptcy Judge

11

**EXHIBIT A**

(DIP Budget)

# Exhibit

# B

$3,000,000


SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION
CREDIT AGREEMENT

**Dated as of December ~~12~~15, 2016**


among

**Wrap Media, Inc., and Wrap Media, LLC**
*as Borrower*

and

**the lenders identified on Schedule A hereto**
*as Lender*

This Secured Super-Priority Debtor-in-Possession Credit Agreement (this "**Agreement**"), dated as of December ~~12~~15, 2016, is made by and among Wrap Media, Inc., a Delaware corporation, and Wrap Media, LLC, a Delaware limited liability company (together, "**Borrower**"), and the lenders identified on <u>**Schedule A**</u> hereto, as such schedule may be amended from time to time (together, "**Lender**").

## RECITALS

A.     On December 10, 2016 (the "**Petition Date**"), Borrower filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "**Case**") in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**");

B.     Borrower has retained possession of its assets and is authorized to continue the operation of its business as a debtor-in-possession;

C.     Subject to entry of the Interim Order (defined below) by the Bankruptcy Court, Borrower shall be authorized to execute and deliver this Agreement and to incur legally enforceable indebtedness and other obligations to Lender that are secured by substantially all assets and properties of Borrower as more particularly described herein; and

D.     Borrower has requested Lender to make postpetition loans on the terms set forth herein, and Borrower and Lender have negotiated in good faith for the extension of such credit.

NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth in this Agreement, and for good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, each of the parties hereto agree as follows:

1.     <u>Definitions</u>.   As used in this Agreement, the following terms shall have the meanings specified below:

"**Administrative Fee**" shall have the meaning assigned to such term in Section 3.

"**Advance**" shall have the meaning assigned to such term in Section 2(a).

"**Affiliates**" shall have the meaning assigned to such term in the Bankruptcy Code and, when used with respect to a specified Person, shall mean another Person that, directly or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with the Person specified.

"**Avoidance Actions**" shall mean claims and causes of action under chapter 5 of the Bankruptcy Code, including without limitation Sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, any other avoidance actions under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, nonbankruptcy law, or any proceeds therefrom.

"**Bankruptcy Code**" shall mean the United States Bankruptcy Code, being Title 11 of the United  States Code, 11 U.S.C. §§ 101 et seq., as enacted in 1978, as the same has heretofore

~~DOCS_SF:92776.5~~ DOCS_SF:92776.6 42335/001

Case: 16-31325   Doc# 33   Filed: 12/19/16   Entered: 12/19/16 11:12:40   Page 19 of 78

been amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

"**Bankruptcy Court**" shall have the meaning assigned to such term in the recitals or any other court having jurisdiction over the Case from time to time.

"**Budget**" shall mean the weekly budget attached to the Orders prepared and delivered by Borrower reflecting projected cash receipts, operating disbursements, payroll disbursements, non-operating disbursements and cash balances for Borrower commencing with the Petition Date, in each case, in form and substance acceptable to Lender and as may be updated from time to time pursuant to amendments thereto as approved by Lender in its sole discretion.

"**Business Day**" shall mean any day other than a Saturday, Sunday or day on which commercial banks in San Francisco, California are authorized or required by law to close.

"**Carve-Out**" shall mean a carve-out for (i) allowed, accrued, but unpaid professional fees and expenses of Borrower and any official committee of unsecured creditors appointed in the Case, in each case up to the amounts set forth in the Budget (on a cumulative basis) incurred prior to an Event of Default not otherwise cured by Borrower or waived by Lender, (ii) allowed, accrued, but unpaid professional fees and expenses of Borrower or any subsequently appointed chapter 7 trustee incurred in the Case after an Event of Default (that is not waived or cured) not to exceed an amount equal to $~~10,000~~35,000, and (iii) the payment of fees pursuant to 28 U.S.C. § 1930; provided that this Carve-Out, any cash collateral and any proceeds of this Agreement may not be used to prosecute, contest or otherwise challenge the validity, perfection, priority, extent, or enforceability of this Agreement, or the Liens securing this facility, or any claims against Lender in its capacity as such.

"**Case**" shall have the meaning assigned to such term in the recitals.

A "**Change in Control**" shall be deemed to have occurred if (a) any "person" or "group" (within the meaning of Rule 13d-5 of the Securities Exchange Act of 1934 as in effect on the date hereof), other than the existing equity holders of Borrower, shall own, directly or indirectly, beneficially or of record, shares representing more than 25% of the aggregate issued and outstanding equity interests of Borrower; (b) any change in control (or similar event, however denominated) with respect to Borrower shall occur under and as defined in any material agreement in respect of which Borrower is a party; or (c) all or substantially all of the assets of Borrower shall be sold, or a chapter 11 plan of reorganization shall be confirmed, without the consent of Lender.

"**Collateral**" shall have the meaning assigned to such term in Section 5(a).

"**Control Account**" shall have the meaning assigned to such term in Section 2(a)(iii).

"**Filing Date**" shall mean the date Borrower files a motion with the Bankruptcy Court for approval of this Agreement.

"**Final Order**" shall mean an order of the Bankruptcy Court, in form and substance reasonably satisfactory to Lender, authorizing, on a permanent basis, Borrower to enter into this Agreement

and as to which no stay on its execution or enforcement is in effect and which has not been reversed, modified, vacated or overturned.

"**GAAP**" shall mean generally accepted accounting principles in the United States.

"**Governmental Authority**" shall mean the government of the United States of America or any other nation, any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"**Interim Order**" shall mean an order of the Bankruptcy Court, in form and substance reasonably satisfactory to Lender, authorizing, on an interim basis, Borrower to enter into this Agreement and as to which no stay on its execution or enforcement is in effect and which has not been reversed, modified, vacated or overturned.

"**Intellectual Property**" means any intellectual property including every: (i) patent or patent application, including improvements, divisions, continuations, renewals, reissues, extensions and continuations-in-part; (ii) trademark, service mark and trade name (whether registered or unregistered), and any application for registration of the same; (iii) copyright (whether registered or unregistered) and any application for registration of the same, and moral rights; (iv) mask work and mask work registration application; (v) trade secret, inventions (whether or not patentable), know-how and (vi) any license or other right to use or to grant the use of, or to be the registered owner or user of, any of the foregoing.

"**Junior Collateral**" shall mean (a) any Collateral that is subject to a valid, perfected and unavoidable Lien under the SVB Indebtedness, and (b) any other prepetition and postpetition property of Borrower, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable Liens in existence immediately prior to the Petition Date, or to valid and unavoidable Liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code.

"**Lead Lender**" shall mean Wrap Media Holdings, LLC, or its designee.

"**Lender Agent**" shall have the meaning assigned to such term in Section 12.

"**Lien**" shall mean, with respect to any asset, (a) any mortgage, deed of trust, lien (statutory or otherwise), pledge, hypothecation, encumbrance, collateral assignment, charge or security interest in, on or of such asset, (b) the interest of a vendor or a lessor under any conditional sale agreement, capital lease or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such asset and (c) in the case of securities, any purchase option, call or similar right of a third party with respect to such securities.

"**Material Adverse Effect**" shall mean a material adverse condition or material adverse change in or affecting (a) the validity or enforceability of this Agreement or the rights and remedies of Lender thereunder, (b) the condition (financial or otherwise), assets, operations, prospects or business of Borrower, not contemplated by the Budget, (c) the ability of Borrower to comply

3

with its obligations under this Agreement (d) the Court denying all or part of the collateral package set forth herein, and (e) the validity, legality, priority or enforceability of any Lien created by this Agreement; provided that, for purposes of all representations and warranties made in connection with this Agreement, none of the following shall be deemed in itself, or in any combination, to constitute, a "Material Adverse Effect": (i) the filing of the Case and (ii) the conditions, events and changes that ordinarily occur in connection with a filing under chapter 11 of the Bankruptcy Code.

"**Maturity Date**" shall mean the earliest of (i) March 31, 2017, or such later date as may be approved by Lender in writing, (ii) the date on which all the obligations under this Agreement have been indefeasibly repaid in full in cash and all of commitments under this Agreement have been permanently and irrevocably terminated, (iii) the date of the closing of a sale of all or substantially all of Borrower's assets pursuant to Section 363 of the Bankruptcy Code, (iv) the date that a plan of reorganization for Borrower pursuant to chapter 11 of the Bankruptcy Code is declared effective, and (v) the date of termination of the commitments and/or acceleration of any outstanding extensions of credit under this Agreement following the occurrence and during the continuance of an Event of Default.

"**Maximum Loan Amount**" shall have the meaning assigned to such term in Section 2(a).

"**Milestone**" shall have the meaning assigned to such term in Section 8(m).

"**Note**" shall have the meaning assigned to such term in Section 2(b).

"**Orders**" shall mean the Interim Order and the Final Order.

"**Other Taxes**" means all present or future stamp, court or documentary taxes and any other excise, property, intangible, recording, filing or similar levies or charges which arise from any payment made under, from the execution, delivery, performance, enforcement or registration of, from the receipt or perfection of a security interest under, or otherwise with respect to this Agreement.

"**Person**" shall mean any natural person, corporation, trust, business trust, joint venture, joint stock company, association, company, limited liability company, partnership, Governmental Authority or other entity.

"**Petition Date**" shall have the meaning assigned to such term in the recitals.

"**Pre-Petition Payment**" shall mean a payment made by Borrower on account of any pre-petition debt or trade payables or other pre-petition claims against Borrower.

"**Resignation Effective Date**" shall have the meaning assigned to such term in Section 11(f).

"**Senior Collateral**" shall mean all of (a) the Intellectual Property, (b) the Control Account, and (c) any other prepetition and postpetition property of Borrower, whether now existing or hereafter acquired, that is not subject to a valid, perfected and unavoidable Lien in existence immediately prior to the Petition Date.

4

"**Subsidiary**" shall mean, with respect to any Person, any corporation, partnership, limited liability company, association or other entity (a) of which securities or other ownership interests representing more than 50% of the equity or more than 50% of the ordinary voting power or more than 50% of the general partnership interests are, at the time any determination is being made, owned, controlled or held by such Person or (b) that is, at the time any determination is made, otherwise controlled by the parent or one or more subsidiaries of such Person or by such Person and one or more subsidiaries of such Person.

"**Superpriority Claim**" shall mean a claim against Borrower in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code which is an administrative expense claim having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code.

"**SVB Accounts**" shall have the meaning assigned to such term in Section 5(a).

"**SVB Indebtedness**" shall mean the principal of, accrued but unpaid interest on, and other amounts owed with respect to the indebtedness of Borrower pursuant to that certain Loan and Security Agreement, dated as of March 18, 2016, among Borrower and Silicon Valley Bank.

"**Taxes**" shall have the meaning assigned to such term in Section 4(b).

"**UCC**" shall mean the Uniform Commercial Code in effect in the State of California.

      2.     <u>Payment of Interest and Principal</u>.

      (a)    <u>Advances</u>.  Until the Maturity Date, and prior to an Event of Default, Borrower may borrow up to three million dollars ($3,000,000) (the "**Maximum Loan Amount**") in one or more drawings by borrowing in accordance with the terms and conditions hereof, including the Budget.  Any amounts borrowed from Lender and repaid by Borrower under this Agreement may not be reborrowed.  Borrowings under this Agreement (each such event being called an "**Advance**") will be available to Borrower as follows:

      (i)    upon entry of the Interim Order (in form and substance satisfactory to Lender), but prior to entry of the Final Order, up to three hundred fifty thousand dollars ($350,000);

      (ii)    upon entry of the Final Order (in form and substance satisfactory to Lender), up to an additional one hundred fifty thousand dollars ($150,000); and

      (iii)    following the foregoing Advances, the balance of the Maximum Loan Amount, reduced by amounts drawn under Sections 2(a)(i) and (a)(ii), solely in the discretion of Lender and at such times and in such amounts as may be agreed by Lender and Borrower.

Each Advance under this Agreement shall be in a minimum amount of $100,000 and shall be made by wire transfer of immediately available funds to a post-petition debtor-in-possession

DOCS_SF:92776.5 DOCS_SF:92776.6 42335/001

account of Borrower designated by Lender which is the subject of a control agreement acceptable to Lender (the "**Control Account**"). The Control Account shall not be subject to the rights of, or liens granted to secure, the SVB Indebtedness.

(b) <u>Making of Advances</u>. In order to request an Advance under this Agreement, Borrower shall provide Lender with a borrowing request at least three (3) Business Days in advance of the requested funding date, which shall (1) be irrevocable, (2) be in writing and signed by Borrower, (3) be in compliance with the Budget, (4) include the amount requested to be borrowed and the requested timing of such borrowing, and (5) state that no Event of Default has occurred or is reasonably likely to occur with the passage of time. The making of any advance hereunder (including the timing thereof and the amount so advanced) shall be subject to Lender's sole determination that the conditions to borrowing hereunder have been satisfied. The Advances may, at the option of Lender, be evidenced by a promissory note in form and substance satisfactory to Lender (each, a "**Note**") and upon the request of Lender, Borrower shall execute and deliver a Note(s) to Lender. Each constituent Lender may assign its interest in any Advance, in whole or in part, to another Lender or to any another Person which, upon such assignment, shall become a constituent Lender.

(c) <u>Rate of Interest</u>.

(i) Interest on the unpaid principal amount of any Advance that is outstanding shall accrue at a daily rate from the date of each Advance through and including the date of repayment of such Advance at a rate equal to six percent (6%) per annum. Interest on the Advances will be calculated on the basis of actual days elapsed over a year of 360 days. Interest shall be due and payable in arrears by Borrower monthly on the first Business Day of each month following the initial Advance and on the Maturity Date.

(ii) During the occurrence and continuance of an Event of Default, additional interest (in addition to the interest payable under Section 2(c)(i)) shall accrue on the unpaid principal and interest of any outstanding Advance at a rate equal to five percent (5%) per annum or the maximum amount of interest allowable by applicable law (the "**Default Rate**"). Any judgments obtained for sums due hereunder shall accrue interest at the Default Rate until paid.

(d) <u>Payment; Maturity</u>. Payment of the outstanding principal amount of any Advance under this Agreement, together with accrued but unpaid interest due in accordance with Section 2(c) above, plus any accrued, due or outstanding fees and expenses of Lender, shall be due and payable on the Maturity Date and on demand therefor as provided for herein. Borrower shall have the right to prepay at any time, in whole and not in part, without penalty or premium, all of the outstanding principal of any outstanding Advances, together with accrued and unpaid interest thereon. In the event the sum of the outstanding principal balance of the Advances shall at any time exceed the Maximum Loan Amount, Borrower shall immediately prepay the Advances to the extent necessary to eliminate such excess.

(e) <u>Place and Manner of Payment</u>. Borrower shall make all payments to Lender Agent, on behalf of Lender, at the address of Lender Agent as set forth in Section 12(d) hereof (or to such other place as Lender or Lender Agent, from time to time, shall designate in

writing to Borrower) not later than 2:00 p.m., Pacific time, on the date when due in immediately available dollars, without setoff, defense or counterclaim. Any payment received by Lender after 2:00 p.m., Pacific time, may be considered received on the next Business Day in Lender's reasonable discretion. All payments under this Agreement shall be made in U.S. dollars. Except as otherwise expressly provided herein, whenever any payment (including principal of or interest or other amounts) or performance under this Agreement shall become due, or otherwise would occur, on a day that is not a Business Day, such payment or performance may be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of interest or fees, if applicable.

Along with each monthly payment, Borrower shall send to Lender Agent a statement accounting for the charges, Advances, and other transactions occurring among and between Lender and Borrower during the prior month.

(f)     Participation as Lender. The Lead Lender shall have and retain the discretion, in its reasonable judgment, to determine the constituent Lender participants and Advances assigned to each Lender under this Agreement.

(g)     Obligations Absolute. No provision of this Agreement shall alter or impair the obligations of Borrower, which are absolute and unconditional, to pay the principal of and interest of any Advance provided under this Agreement (and any other amounts due hereunder) at the place, times, rate, and in the currency, herein prescribed. Subject to the provisions of Section 11, upon the maturity (whether by acceleration or otherwise) of the obligations under this Agreement of Borrower, Lender shall be entitled to immediate payment of such obligations without further application to or order of the Bankruptcy Court.

3.     Administrative Fee. Upon entry of the Interim Order, Borrower shall pay Lender an administrative fee of $15,000 (the "**Administrative Fee**"). The Administrative Fee shall be fully earned upon payment and shall not be subject to refund or rebate under any circumstances (including, without limitation, the failure of Borrower to obtain entry of a Final Order or the failure of any conditions to the making of an Advance for any reason). Borrower shall not be required to pay any commitment or closing fees to Lender in respect of this Agreement. Borrower acknowledges and agrees that Lender or Lender Agent may appoint an administrative agent for purposes of performing administrative and bookkeeping functions with respect to Lender's rights under this Agreement. The fees of any administrative agent shall be included within the Administrative Fee.

4.     Other Expenses. Borrower shall reimburse Lender Agent on demand for all costs and expenses, including reasonable attorneys' fees, incurred by Lender Agent from and after the Filing Date related to the approval, amendment, administration and enforcement of this Agreement and any other loan documents.

5.     Taxes Generally.

(a)     All payments by or on account of any obligation of Borrower under this Agreement shall be made free and clear of and without deduction for any present or future excise, stamp or other taxes, fees, duties, levies, imposts, charges, deductions, withholdings or

other charges of any nature whatsoever imposed by any taxing authority, but excluding (A) any taxes imposed on or measured by Lender's net income or franchise taxes imposed in lieu of net income taxes, that would not be imposed but for a present or former connection between Lender and the jurisdiction imposing such taxes (other than a connection arising solely from such recipient having executed, delivered or performed its obligations or received a payment under, or enforced, this Agreement), and (B) any United States withholding tax that is imposed on amounts payable to Lender on the date hereof (or at the time Lender designates a new lending office) or is attributable to Lender's failure (other than as a result of a change in applicable law) to comply with Section 4(b) (to the extent legally able to be provided and requested by Borrower), except to the extent that Lender (or its assignor, if any) was entitled, at the time of designation of a new lending office (or assignment), to receive additional amounts from Borrower with respect to such withholding tax pursuant to Section 4(b) (such non excluded items being collectively called "**Taxes**"). If any withholding or deduction from any payment to be made by Borrower hereunder is required in respect of any Taxes pursuant to any applicable law, then Borrower will:

       (i)     make (or cause to be made) such deductions and pay directly to the relevant Governmental Authority the full amount so deducted in accordance with applicable law; and

       (ii)     promptly forward to Lender an official receipt or other documentation satisfactory to Lender evidencing such payment to such Governmental Authority.

In addition, Borrower shall pay (or cause to be paid) any Other Taxes to the relevant Governmental Authority in accordance with applicable law.

       (b)    <u>Tax Forms</u>.  Prior to the first payment of interest under this Agreement, Lender shall deliver to Borrower such certificates, documents or other evidence, as required by the Internal Revenue Code of 1986, as amended (the "**Internal Revenue Code**") or Treasury Regulations issued pursuant thereto, properly completed, currently effective and duly executed by Lender establishing that payments to it under the Agreement are (A) not subject to United States Federal backup withholding tax and, if applicable (B) not subject to United States Federal withholding tax under the Internal Revenue Code.  Lender shall obtain such extensions of the time for filing, and renew such forms and certifications thereof, as may be reasonably requested by Borrower.

       6.    <u>Security</u>.

       (a)    <u>Grant of Security</u>.  Borrower hereby pledges, assigns, transfers and grants to, and creates in favor of Lender, a continuing security interest and lien under the UCC and all other applicable laws in all of the tangible and intangible prepetition and postpetition property of Borrower, in each case whether now existing or hereafter acquired, wherever located, and whether Borrower now has or at any time in the future may acquire any right, title or interest, including the following property  (collectively, the "**Collateral**"), <u>provided that</u>, Collateral shall not include Avoidance Actions and the proceeds thereof, as security for the full and timely payment, observance and performance of any and all obligations under this Agreement (terms

<div align="center">8</div>

used in this Section 5, but not otherwise defined in this Agreement, have the meanings assigned to such terms in the UCC):

(i)  all accounts;

(ii)  all chattel paper;

(iii)  all commercial tort claims from time to time specifically described in writing from Borrower to Lender;

(iv)  all contracts;

(v)  all deposit accounts, including the Control Account, but excluding any Accounts held at Silicon Valley Bank (the "**SVB Accounts**"); provided that, Grantor shall be deemed to have granted a security interest in the SVB Accounts immediately following the satisfaction of the SVB Indebtedness;

(vi)  all documents;

(vii)  all equipment;

(viii)  all fixtures;

(ix)  all general intangibles;

(x)  all goods;

(xi)  all instruments;

(xii)  all insurance;

(xiii)  all Intellectual Property;

(xiv)  all inventory;

(xv)  all investment property;

(xvi)  all letters of credit and letter of credit rights;

(xvii)  all money;

(xviii)  all receivables and receivables records;

(xix)  all securities;

(xx)  proceeds of leasehold interests, including the refund of any security deposits;

9

(xxi)   all books, records, ledger cards, files, correspondence, customer lists, supplier lists, blueprints, technical specifications, manuals, computer software and related documentation, computer printouts, tapes, disks and other electronic storage media and related data processing software and similar items that at any time pertain to or evidence or contain information relating to any of the Collateral or are otherwise reasonably necessary in the collection thereof or realization thereupon; and

(xxii)   to the extent not otherwise included, all other property, whether tangible or intangible, of Borrower and all proceeds, products, accessions, rents and profits of any and all of the foregoing and all collateral support and guarantees given by any Person with respect to any of the foregoing.

For the avoidance of doubt, Lender's rights in the Collateral shall be subject to the rights of the SVB Indebtedness as of the Petition Date, to the extent applicable.  Because Intellectual Property is not encumbered by the SVB Indebtedness, Lender's rights in such Collateral shall be senior to the SVB Indebtedness.  Lender also shall have a senior Lien against the Control Account.

(b)     Rights in Collateral.  Borrower represents, warrants and covenants that it has and shall have at all times good and valid title to all of the Collateral, free and clear of all liens, claims, charges and encumbrances other than Liens under this Agreement and the SVB Indebtedness, and Borrower shall defend such title against the claims and demands of all other Persons.  Borrower represents and warrants that this Agreement creates a valid security interest in the Collateral and, upon entry of the Interim Order, such security interest shall constitute a perfected lien on and security interest in all Collateral.  Borrower assumes full responsibility for taking any and all steps to preserve its rights with respect to the Collateral.

(c)     Control of Collateral.  Borrower hereby covenants and agrees that, upon entry of the Interim Order, Borrower shall immediately take any and all action(s) necessary for Lender to have full "control" (within the meaning of the applicable UCC) over the Control Account necessary to perfect Lender's security interest therein immediately prior to the making of the first Advance under this Agreement.  Further, Borrower hereby covenants and agrees that it shall further immediately take any and all additional action(s) which Lender deems reasonably necessary in its discretion to ensure that Lender's security interest in all of the remaining collateral provided under this Agreement is perfected.

(d)     Preservation of Security Interest.  Borrower shall diligently preserve and protect Lender's security interest in the Collateral and shall, at its expense, cause such security interest to be and remain perfected so long as this Agreement or any portion thereof or obligation hereunder remains outstanding and unpaid and, for such purposes, Borrower shall, from time to time at Lender's reasonable request and at Borrower's expense, file or record, or cause to be filed or recorded, such instruments, documents and notices (including, without limitation, financing statements and continuation statements) as may be necessary to perfect and continue such security interests.  Borrower shall do all such other acts and things and shall execute and deliver all such other instruments, security agreements and documents as Lender may reasonably request from time to time to protect and preserve the priority of Lender's security interest in the Collateral as a perfected security interest.

| DOCS_SF:92776.5 DOCS_SF:92776.6 42335/001

(e)　Remedies on Default.　Subject to the Orders and payment of the SVB Indebtedness, if any Event of Default shall occur and be continuing, Lender may (i) to the full extent permitted by law take possession and control of all or any part of the Collateral and any proceeds thereof and the books and records pertaining thereto, with or without judicial process, and (ii) without demand or notice (and if notice is required by law, after ten days prior written notice), proceed to exercise one or more of the rights and remedies accorded to a secured party by the UCC and otherwise by law or by the terms hereof. Lender's rights and remedies shall include without limitation the power to sell all or any portion of the Collateral at public or private sale at such place and time and on such terms as Lender may see fit (subject to the requirements of applicable law).　Without precluding any other methods of sale, the sale of Collateral shall be deemed to have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of secured parties disposing of similar property, but in any event, Lender may sell the Collateral on such terms as Lender may choose without assuming any credit risk and without any obligation to advertise or give notice of any kind not expressly required under this Agreement, by the UCC or otherwise. All of the rights and remedies of Lender under this Agreement shall be cumulative and not exclusive of other rights and remedies which it otherwise would have, whether under the Agreement, the Bankruptcy Code, the UCC or otherwise.　Lender shall not be under any obligation to marshal any assets in favor of Borrower or any other Person or against or in payment of this Agreement.

(f)　Priority.　Subject to the Carve-Out, Borrower hereby covenants, represents and warrants that, upon entry of the Interim Order and the Final Order, the obligations of Borrower under this Agreement:

(1)　pursuant to Section 364(c)(1) of the Bankruptcy Code, shall at all times constitute an allowed Superpriority Claim in the Case;

(2)　pursuant to Sections 364(c)(2) of the Bankruptcy Code, shall be secured by a valid, binding, continuing, enforceable, fully-perfected senior Lien on, and security interest in, the Senior Collateral;

(3)　pursuant to Section 364(c)(3) of the Bankruptcy Code, shall be are secured by a valid, binding, continuing, enforceable, fully-perfected junior Lien on, and security interest, in all Junior Collateral; and

(4)　(I) shall not be subject or subordinate to (A) any Lien or security interest that is avoided and preserved for the benefit of Borrower and its estate under Section 551 of the Bankruptcy Code, or (B) any Liens arising after the Petition Date or (II) subordinated to or made *pari passu* with any other Lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise without the express prior consent of Lender.

7.　Representations and Warranties.　Borrower represents and warrants to Lender as follows:

(a)　Organization.　Borrower is duly organized and validly existing and, to the extent legally applicable, in good standing under the laws of the State of California, and has the

11

requisite power and authorization to own its properties and to carry on its business as now being conducted.

(b) Authorization, Execution, Delivery. Subject to entry of the Interim Order (or the Final Order, when applicable), Borrower has the requisite power and authority to enter into and perform its obligations under this Agreement, and to perform under this Agreement in accordance with the terms hereof. Subject to entry of the Interim Order (or the Final Order, when applicable), the execution and delivery of this Agreement by Borrower and the consummation of the transactions contemplated hereby have been duly authorized by Borrower and no further filing, consent, or authorization is required by Borrower or its members. This Agreement has been duly executed and delivered by Borrower, and constitutes the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms, except as such enforceability may be limited by the Bankruptcy Code.

(c) Noncontravention. The execution, delivery and performance of this Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby will not result in a violation of any certificate of incorporation, certificate of formation, any certificate of designation or other constituent documents of Borrower, any capital stock of Borrower or bylaws of Borrower.

(d) Governmental Approvals. Other than entry of the Interim Order (or the Final Order, when applicable), no action, consent or approval of, registration or filing with, permit from, notice to, or any other action by, any Governmental Authority is or will be required in connection with this Agreement, except for such as have been made or obtained and are in full force and effect.

(e) No Material Adverse Change. No event, change or condition has occurred since the Petition Date that has caused, or could reasonably be expected to cause, a Material Adverse Effect other than events, changes or conditions that ordinarily would occur in connection with a filing under chapter 11 of the Bankruptcy Code.

(f) Use of Proceeds. The borrowings under this Agreement shall be used (a) to pay interest, charges, fees and expenses (including attorneys' fees for counsel to Lender) under this Agreement, (b) to fund post-petition operating expenses and other general corporate needs of Borrower, (c) to pay certain administrative expenses of the Case, including reasonable fees and expenses of professionals, and (d) to make such other court-approved payments, in each case, solely in the manner contemplated by and in amounts consistent with the Budget, subject to any permitted variances.

(g) Tax Returns. Borrower has timely filed or timely caused to be filed all federal and state income tax returns and other material tax returns required to have been filed by it and not subject to any extension and all such tax returns are correct and complete in all material respects. Borrower has timely paid or caused to be timely paid or adequately reserved for all income and franchise taxes due and payable by it (also including and not limited to any and all withholding taxes, sales or use taxes, and all other "trust fund" taxes) and all assessments received by it, except taxes that are being contested in good faith by appropriate proceedings and for which Borrower shall have set aside on its books adequate reserves in accordance with

12

GAAP.  Borrower (a) does not intend to treat the proceeds of this Agreement or any of the transactions contemplated by this Agreement as being a "reportable transaction" (within the meaning of Treasury Regulation Section 1.6011-4) (b) is not aware of any facts or events that would result in such treatment, and (b) has never "participated" in a "listed transaction" (within the meaning of Treasury Regulation Section 1.6011-4).  Borrower is not party to any tax sharing agreement with any Person.

       (h)   <u>No Material Misstatements</u>.  None of the information, reports, financial statements, exhibits or schedules furnished by or on behalf of Borrower for use in connection with this Agreement or in connection with the negotiation of this Agreement or included therein or delivered pursuant thereto (as modified or supplemented by other information so furnished), taken as a whole, contained or contains any material misstatement of fact or omitted or omits to state any material fact necessary to make the statements therein, in the light of the circumstances under which they were, are or will be made, not misleading; provided that to the extent any such information, reports, financial statements, exhibits or schedules were based upon or constitute a forecast or projection, Borrower represents only that it acted in good faith and utilized reasonable assumptions in light of the conditions existing at the time of preparation. The forecasts and projections that have been or will be made available to Lender by Borrower have been or will be prepared in good faith based upon reasonable assumptions at the time of delivery.

       (i)   <u>Liens</u>.  There are no Liens of any nature whatsoever on any of the properties or assets of Borrower other than Liens otherwise permitted by this Agreement and the SVB Indebtedness.

   8.   <u>Conditions Precedent</u>.  The making of borrowings under this Agreement by Lender is subject to the satisfaction of the following conditions:

       (a)   <u>All Advances</u>.  On the date of each Advance:

       (i)   The representations and warranties set forth herein shall be true and correct in all material respects on and as of the date of such Advance with the same effect as though made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct in all material respects on and as of such earlier date (except that such materiality qualifiers shall not be applicable to any representation and warranty that is already qualified by materiality).

       (ii)   At the time of and immediately after giving effect to such Advance, no Event of Default shall have occurred and be continuing (unless otherwise waived in writing by Lender).

       (iii)   At the time of such Advance, either (a) the Interim Order shall be in full force and effect or (b) if the date of such requested extension of credit is more than 30 calendar days after the Petition Date, the Final Order shall have been entered.

       (iv)   The making of such Advance shall not violate any requirement of applicable law and shall not be enjoined, temporarily, preliminarily or permanently.

13

(v)     Each Advance shall be deemed to constitute a representation and warranty by Borrower on the date of such Advance as to the matters specified in this Section 7(a).

(b)     <u>Deliverables</u>.  On or prior to the making of the initial Advance under this Agreement:

(i)     Lender shall have received this Agreement, executed and delivered by a duly authorized officer of Borrower, and any deliverables required thereunder.

(ii)     Lender shall have been granted perfected Liens on the Collateral and shall have received a customary control agreement for the Control Account.

(iii)     There shall be no litigation, governmental, administrative or judicial action, actual or threatened, that could reasonably be expected to restrain, prevent or impose burdensome conditions on Borrower, this Agreement, or the other transactions contemplated hereby, including the repayment hereof.

(iv)     Lender shall have received, with respect to Borrower, (a) customary officer's certificates and other evidence of corporate authorization (including applicable constituent documents), and (b) a notice of borrowing.

(v)     Lender shall have received and approved the Budget in its reasonable discretion.

(vi)     Lender shall have received evidence satisfactory to Lender in its reasonable discretion of the entry of the Interim Order (i) approving this Agreement, (ii) granting the Superpriority Claim status and Liens described herein and in the Interim Order, and (iii) finding that Borrower has acted in "good faith" pursuant to Section 364(e) of the Bankruptcy Code.

(vii)     All "first day orders" will be in form and substance reasonably satisfactory to Lender.

9.     <u>Affirmative Covenants</u>.  Borrower covenants and agrees with Lender that so long as this Agreement shall remain in effect and until this Agreement has been terminated and the principal of and interest hereunder, all fees and all other expenses or amounts payable hereunder shall have been paid in full, Borrower will:

(a)     <u>Existence; Businesses and Properties</u>.

(i)     Except as occasioned by the Case, do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence.

(ii)     Except to the extent failure to do so could not reasonably be expected to have a Material Adverse Effect or would violate the Orders, (i) do or cause to be done all things necessary to obtain, preserve, renew, extend and keep in full force and effect the rights, licenses, permits, franchises, authorizations, patents, copyrights, trademarks and trade

14

names used in the conduct of its business; (ii) comply with all applicable laws, rules, regulations and decrees and orders of any Governmental Authority, whether now in effect or hereafter enacted; (iii) comply with the terms of, and enforce its rights under, each lease of real property and each other agreement so as not to permit any uncured default on its part to exist thereunder; and (iv) at all times maintain and preserve all of its property and keep such property in good repair, working order and condition and from time to time make, or cause to be made, all needful and proper repairs, renewals, additions, improvements and replacements thereto necessary in order that the business carried on in connection therewith may be properly conducted at all times.

(b)  <u>Insurance</u>.  Keep its insurable properties adequately insured at all times by financially sound and reputable insurers to such extent and against such risks (and with such deductibles, retentions and exclusions), including fire and other risks insured against by extended coverage, as is reasonable and customary for companies in the same or similar businesses operating in the same or similar locations, including public liability insurance against claims for personal injury or death or property damage occurring upon, in, about or in connection with the use of any properties owned, occupied or controlled by it; maintain such other insurance as may be required by law; and maintain such other insurance as otherwise required by the this Agreement (and comply with all covenants in the this Agreement with respect thereto).

(c)  <u>Obligations and Taxes</u>.  Except to the extent otherwise required by the Orders, (i) pay its material obligations arising after the Petition Date that are provided in the Budget promptly and in accordance with their terms, subject to a permitted variance of fifteen percent (15%) for all weekly disbursements in the aggregate or such other variance as may be requested by Borrower and approved by Lender; (ii) timely file (after giving effect to any valid extensions of time in which to file such filings) all of its tax returns; and (iii) pay and discharge promptly when due all material taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits or in respect of its property, arising after the Petition Date before the same shall become delinquent or in default (also including and not limited to any and all withholding taxes, sales or use taxes, and all other "trust fund" taxes) as well as all lawful claims for labor, materials and supplies or otherwise that, if unpaid, would reasonably be expected to give rise to a Lien upon such properties or any part thereof; provided, however, that such payment and discharge shall not be required with respect to any such material tax, assessment, charge, levy or claim so long as the validity or amount thereof shall be contested in good faith by appropriate proceedings and Borrower shall have set aside on its books adequate reserves with respect thereto in accordance with GAAP.

(d)  <u>Financial Documents</u>.  Furnish to Lender:

(i)  as soon as possible after preparation, copies of financial statements otherwise prepared in the ordinary course of business;

(ii)  the Budget and updates as requested by Lender;

(iii)  not later than the Wednesday following the end of each calendar week beginning with the calendar week during which the Interim Order is entered, provide Lender with a line-by-line variance report detailing any variances from the Budget in receipts, disbursements, or both, for such calendar week, and comparing actual cash receipts and

disbursements to amounts projected in the Budget, in form and scope reasonably acceptable to Lender;

(iv)    if applicable, promptly after the same become publicly available, copies of all periodic and other reports, proxy statements and other materials filed by Borrower with the Securities and Exchange Commission; and

(v)    copies of all material documents filed by or on behalf of with the Bankruptcy Court in the Case, or distributed by or on behalf of Borrower to any official committee appointed in the Case;

(e)    <u>Litigation and Other Notices</u>.  Furnish to Lender prompt written notice of the following:

(i)    any Event of Default, specifying the nature and extent thereof and the corrective action (if any) taken or proposed to be taken with respect thereto; and

(ii)    the filing or commencement of, or any threat or notice of intention of any Person to file or commence, any action, suit or proceeding, whether at law or in equity or by or before any arbitrator or Governmental Authority, against Borrower that could reasonably be expected to result in a Material Adverse Effect.

(f)    <u>Information Regarding Collateral</u>.  Furnish to Lender prompt written notice of any change in Borrower's (i) corporate name, (ii) jurisdiction of organization or any office in which it maintains books or records relating to the Collateral owned by it, (iii) identity or corporate structure, or (iv) organizational identification number.  Borrower agrees to promptly to notify Lender if any material portion of the Collateral is damaged or destroyed.

(g)    <u>Maintaining Records; Access to Finances</u>.  Keep proper books of record and account in which materially full, true and correct entries in conformity with GAAP are made of all material dealings and transactions in relation to its business and activities.  Borrower will permit any representatives designated by Lender to visit and inspect its respective financial records and properties at reasonable times during normal business hours on reasonable notice and as often as reasonably requested and to make extracts from and copies of such financial records, and permit any representatives designated by Lender to discuss the affairs, finances and condition of Borrower with the officers thereof and independent accountants therefor provided that (i) any such visit or inspection shall be coordinated through Lender and (ii) in respect of any such discussions with any independent accountants, Borrower, as the case may be, shall have received reasonable advance notice thereof and a reasonable opportunity to participate therein.

(h)    <u>Limitation on Use of Proceeds</u>.  The proceeds of Advances made hereunder will be used only (a) to finance the operations of Borrower in the ordinary course of business and in accordance with the Budget, (b) to pay fees and expenses in connection with the transactions contemplated hereby and, to the extent approved by the Bankruptcy Court and as set forth in the Orders, in connection with the Case, (c) for other payments permitted to be made by the Orders and any other order of the Bankruptcy Court, and (d) for general corporate purposes, in each case to the extent expressly permitted under applicable law, this Agreement, the Orders and in accordance with the Budget.  No part of the proceeds of any Advance will be used,

16

whether directly or indirectly: (i) to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the interests of Lender or its rights and remedies under this Agreement or any of the Orders, including, without limitation, for the payment of any services rendered by the professionals retained by Borrower or any official committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the obligations hereunder or the Liens securing same, (y) for monetary, injunctive or other affirmative relief against Lender or the Collateral, or (z) preventing, hindering or otherwise delaying the exercise by Lender of any rights and remedies under the Orders, this Agreement or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the court or otherwise) by Lender upon any of the Collateral; (ii) to make any distribution under a plan of reorganization in the Case; and (iii) unless otherwise approved by the Bankruptcy Court, to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the Lender.

(i)     Further Assurances.   From time to time duly authorize, execute and deliver, or cause to be duly authorized, executed and delivered, such instruments, certificates, financing statements, agreements or documents, and take all such actions (including filing UCC and other financing statements), as Lender may reasonably request, for the purposes of implementing or effectuating the provisions of this Agreement, or documenting (other than the Orders), perfecting or renewing the rights of Lender with respect to the Collateral (or with respect to any additions thereto or replacements or proceeds or products thereof or with respect to any other property or assets hereafter acquired by Borrower which may be deemed to be part of the Collateral), and the Orders.  Upon the exercise by Lender of any power, right, privilege or remedy pursuant to this Agreement or the Orders which requires any consent, approval, recording, qualification or authorization of any Governmental Authority, Borrower will execute and deliver, or will cause the execution and delivery of, all applications, certifications, instruments and other documents and papers that Lender may be required to obtain from Borrower for such governmental consent, approval, recording, qualification or authorization.

(j)     Budget.

(i)     Operate in accordance with the Budget and such Budget will take into account all funds received by Borrower, subject to a permitted variance of fifteen percent (15%) for all weekly disbursements in the aggregate or such other variance as may be requested by Borrower and approved by Lender.

(ii)     In the event that management of Borrower determines it necessary to take any action or make any payment in an emergency situation, management will obtain the prior written consent of Lender, which consent may be obtained via e-mail.

(k)     DIP Milestones.  Obtain entry of the (x) Interim Order by the Bankruptcy Court within five (5) Business Days following the Petition Date and (y) Final Order by the Bankruptcy Court no later than thirty (30) calendar days following the date of the Interim Order, in each case on terms that are in all respects satisfactory to Lender, provided that, Lender may

17

DOCS_SF:92776.5 DOCS_SF:92776.6 42335/001

agree, in its sole discretion, to extend the applicable timing in connection with any of the foregoing milestones or waive any such milestone.

10. <u>Negative Covenants</u>. Borrower covenants and agrees that, so long as this Agreement shall remain in effect and until this Agreement has been terminated and the principal of and interest hereunder, all fees and all other expenses or amounts payable hereunder have been indefeasibly paid in full, Borrower will not, without the prior written consent of Lender:

(a) <u>Business of Borrower</u>. With respect to Borrower, engage at any time in any business or business activity other than the business conducted by it as of the date hereof and business activities reasonably incidental or related thereto.

(b) <u>Pre-Petition Payments</u>.

(i) Make Pre-Petition Payments, other than Pre-Petition Payments which are authorized by the Bankruptcy Court pursuant to authority granted by the Orders, the "first-day orders" or other orders in form and substance satisfactory to Lender in its reasonable discretion.

(ii) Pay any management, consulting or similar fees to any executives, directors, officers or shareholders of Borrower, in any case by direct payment or otherwise, or enter into any employment or consulting agreements with current management, shareholders or directors of Borrower, in any case, unless (a) contemplated by the Budget or (b) made with the prior written consent of Lender.

(c) <u>Bankruptcy Case Matters</u>.

(i) Seek, consent to or fail to oppose any modification, stay, vacatur or amendment of the Orders without the prior written consent of Lender.

(ii) Seek, consent to or fail to oppose the modification, alteration or impairment in any manner of the Liens, security interests, rights or remedies granted to Lender pursuant to the Orders and this Agreement.

(d) <u>Subsidiaries</u>. Form or create a Subsidiary of Borrower following the Petition Date without the consent of Lender.

11. <u>Events of Default; Remedies</u>.

(a) <u>Events of Default</u>. The following shall constitute events of default ("**Events of Default**") under this Agreement:

(i) a default in the payment of any interest on any of the Advances as and when the same shall become due and payable;

(ii) a default in the payment of all or any part of the principal of any of the Advances as and when the same shall become due and payable either at maturity, by declaration, acceleration or otherwise, whether or not prohibited by any provisions hereof;

(iii)     a failure on the part of Borrower to duly observe or perform any of the covenants or agreements on the part of Borrower contained in this Agreement;

(iv)     any representation, warranty or statement made or deemed made by Borrower herein shall prove to be false or misleading in any material respect when so made;

(v)     a Material Adverse Effect in the financial condition of Borrower, as determined by Lender in its reasonable discretion;

(vi)     the appointment of an examiner with expanded powers, the appointment of a chapter 11 trustee in Borrower's Case, conversion of the chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or dismissal of the chapter 11 Case by order of the Bankruptcy Court;

(vii)     an order of the Bankruptcy Court shall be entered granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to permit foreclosure on account of the SVB Indebtedness;

(viii)     any order of the Bankruptcy Court shall be entered amending, modifying, superseding, staying, reversing or vacating any of the Orders or having the effect of doing so without the prior written consent of Lender;

(ix)     the failure by Borrower to achieve the milestones described in Section 8(l);

(x)     the failure of Borrower to perform Bankruptcy Court orders in any material respect; and

(xi)     any breach by Borrower of any material term or condition of the Interim Order or the Final Order, as applicable.

(b)     <u>Remedies</u>.

(i)     <u>Acceleration</u>.  Subject to the Orders, after the occurrence and continuance of an Event of Default and upon five (5) Business Days' written notice following such Event of Default from Lender to Borrower, if Borrower has not within such five (5) day period either (A) cured any such Event of Default; or (B) obtained an order from the Bankruptcy Court excusing Borrower's performance or otherwise determining that no such Event of Default has occurred, Lender shall have the right to declare the entire unpaid principal amount of any outstanding advances under the DIP Facility, together with all accrued but unpaid interest and any unpaid fees and expenses incurred by Lender, immediately due and payable.  Borrower waives presentment, protest, demand, notice of dishonor and all other requirements of any kind. Lender's failure to exercise any right or remedy under the DIP Facility or acceptance of partial or delinquent payments, shall not be a waiver of any obligation of Borrower or right of Lender, or constitute Lender's waiver of any other default subsequently occurring.

(ii)     <u>Automatic Stay</u>.  Subject to the Orders, after the occurrence and continuance of an Event of Default and upon seven (7) Business Days' written notice following

DOCS_SF:92776.5 DOCS_SF:92776.6 42335/001

such Event of Default from Lender to Borrower, if Borrower has not within such seven (7) day period otherwise obtained an order from the Court maintaining the automatic stay, the automatic stay provided in Section 362 of the Bankruptcy Code shall be deemed modified and Lender shall have the right to exercise any of the remedies under the DIP Facility loan documents, including any rights and remedies provided herein and the right to realize on the DIP Collateral without further relief or order of this Court.

              (iii)     The remedies set forth herein shall be in addition to, and not in lieu of, any other additional rights or remedies to which Lender may be entitled, whether at law, in equity or otherwise.  After the occurrence and continuance of an uncured Event of Default and upon written notice of such Event of Default from Lender to Borrower, Lender shall have the right to take all or any actions and exercise any remedies available to a secured party under this Agreement or applicable law or in equity subject to any requirements set forth in the Orders and the automatic stay provided in Section 362 of the Bankruptcy Code shall be deemed automatically vacated and Lender shall have the right to exercise any of the remedies under this Agreement, including any rights and remedies provided in the Orders and the right to realize on all of the Collateral without further relief or order of the Bankruptcy Court except as provided in the Orders.

              (iv)     Subject to the Orders, Lender shall have the right to credit bid this Agreement under Section 363 of the Bankruptcy Code or pursuant to a plan of reorganization in Borrower's Case.

        12.    Lender Agent.  Lender hereby irrevocably appoints, designates and authorizes Lead Lender to act on its behalf as Lender Agent hereunder ("**Lender Agent**") and authorizes Lender Agent to take such actions and to exercise such powers as are delegated to Lender by the terms hereof, together with such actions and powers as are reasonably incidental thereto.  Lender Agent shall consult in good faith with Lender as may be necessary or appropriate in the reasonable discretion of Lender Agent with respect to the exercise of Lender's rights and obligations under this Agreement.  It is understood and agreed that the use of the term "agent" herein (or any other similar term) with reference to Lender Agent is not intended to connote any fiduciary or other implied (or express) obligations arising under agency doctrine of any applicable law.

        (a)    Collateral Agent.  Lender Agent shall also act as the "collateral agent" under this Agreement, and each constituent of Lender hereby irrevocably appoints and authorizes Lender Agent to act as the agent of Lender for purposes of acquiring, holding and enforcing any and all Liens on Collateral granted by Borrower to secure any of the obligations under this Agreement, together with such powers and discretion as are reasonably incidental thereto.  In this connection, Lender Agent, as "collateral agent" and any co-agents, sub-agents and attorneys-in-fact appointed by Lender Agent for purposes of holding or enforcing any Lien on the Collateral (or any portion thereof) granted under this Agreement, or for exercising any rights and remedies thereunder at the direction of Lender Agent), shall be entitled to the benefits of all provisions of this Section 11 as though such co-agents, sub-agents and attorneys-in-fact were the "collateral agent" under this Agreement) as if set forth in full herein with respect thereto.  Lender Agent shall not be responsible for or have a duty to ascertain or inquire into any representation or warranty regarding the existence, value or collectability of the Collateral, the existence, priority

or perfection of Lender Agent's Lien thereon, or any certificate prepared by Borrower in connection therewith, nor shall Lender Agent be responsible or liable to Lender for any failure to monitor or maintain any portion of the Collateral.

(b)     Exculpatory Provisions.  Lender Agent (a) shall not be subject to any fiduciary or other implied duties, regardless of whether an Event of Default has occurred and is continuing, (b) shall not have any duty to take any discretionary action or exercise any discretionary powers; and (c) shall be fully justified in failing or refusing to take any action under this Agreement.  Neither Lender Agent nor any of its Affiliates shall be liable to Lender and/or Borrower for any action taken or not taken by Lender Agent under or in connection with this Agreement or the transactions contemplated hereby in the absence of its own gross negligence or willful misconduct as determined by a court of competent jurisdiction by final and nonappealable judgment.  Any such action taken or failure to act pursuant to the foregoing shall be binding on Lender.  Lender Agent shall be deemed not to have knowledge of any Event of Default unless and until notice describing such Event of Default is given in writing to Lender Agent by Borrower.

(c)     Indemnity.  Lender agrees to indemnify Lender Agent, its Affiliates and their respective officers, partners, directors, trustees, employees and agents (each, an "Indemnitee Agent Party"), to the extent that such Indemnitee Agent Party shall not have been reimbursed by Borrower, for and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses (including counsel fees and disbursements) or disbursements of any kind or nature whatsoever which may be imposed on, incurred by or asserted against such Indemnitee Agent Party in exercising its powers, rights and remedies hereunder or otherwise in its capacity as such Indemnitee Agent Party in any way relating to or arising out of this Agreement, provided, Lender shall not be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from such Indemnitee Agent Party's gross negligence or willful misconduct, as determined by a court of competent jurisdiction in a final, non-appealable order.

(d)     Reliance by Lender Agent.  Lender Agent shall be entitled to rely upon, and shall be fully protected in relying and shall not incur any liability for relying upon, any notice, request, certificate, communication, consent, statement, instrument, document or other writing (including any electronic message, Internet or intranet website posting or other distribution) believed by it to be genuine and to have been signed, sent or otherwise authenticated by the proper Person.  Lender Agent also may rely upon any statement made to it orally or by telephone and believed by it to have been made by the proper Person, and shall be fully protected in relying and shall not incur any liability for relying thereon.  In determining compliance with any condition hereunder to the making of an Advance that by its terms must be fulfilled to the satisfaction of any constituent Lender, Lender Agent may presume that such condition is satisfactory to such Lender unless Lender Agent shall have received notice to the contrary from such Lender prior to the making of such Advance.  Lender Agent may consult with legal counsel (who may be counsel for Lender), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

DOCS_SF:92776.5 DOCS_SF:92776.6 42335/001

(e)    Delegation of Duties.  Lender Agent may perform any and all of its duties and exercise its rights and powers hereunder by or through any one or more sub-agents appointed by Lender Agent.  Lender Agent and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective Affiliates.  The exculpatory provisions of this Section shall apply to any such sub-agent and to the Affiliates of Lender Agent and any such sub-agent.  Lender Agent shall not be responsible for the negligence or misconduct of any sub-agents except to the extent that a court of competent jurisdiction determines in a final and nonappealable judgment that Lender Agent acted with gross negligence or willful misconduct in the selection of such sub-agents.

(f)    Resignation.  Lender Agent may at any time give notice of its resignation to Lender and Borrower.  Upon receipt of any such notice of resignation, Lender shall have the right to appoint a successor.  If no such successor shall have been so appointed by Lender and shall have accepted such appointment within thirty (30) days after the retiring Lender Agent gives notice of its resignation (or such earlier day as shall be agreed by the Lenders) (the "**Resignation Effective Date**"), then the retiring Lender Agent may (but shall not be obligated to) on behalf of Lender, appoint a successor Lender Agent.  Whether or not a successor has been appointed, such resignation shall become effective in accordance with such notice on the Resignation Effective Date.  With effect from the Resignation Effective Date (i) the retiring Lender Agent shall be discharged from its duties and obligations hereunder (except that in the case of any collateral security held by Lender Agent on behalf of Lender under this Agreement, the retiring Lender Agent shall continue to hold such collateral security until such time as a successor Lender Agent is appointed) and (ii) except for any indemnity payments or other amounts then owed to the retiring Lender Agent, all payments, communications and determinations provided to be made by, to or through Lender Agent shall instead be made by or to Lender directly, until such time, if any, as successor Lender Agent is appointed as provided for above.  Upon the acceptance of a successor's appointment as Lender Agent hereunder, such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the retiring Lender Agent (other than any rights to indemnity payments or other amounts owed to the retiring Lender Agent as of the Resignation Effective Date).  After the retiring Lender Agent's resignation hereunder, the provisions of this Section shall continue in effect for the benefit of such retiring Lender Agent, its sub-agents and their respective Affiliates in respect of any actions taken or omitted to be taken by any of them while the retiring Lender Agent was acting as Lender Agent.

(g)    Non-Reliance on Lender Agent.  Each constituent Lender acknowledges that it has, independently and without reliance upon Lender Agent or any other Lender or any of their Affiliates and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  Each Lender also acknowledges that it will, independently and without reliance upon Lender Agent or any other constituent Lender or any of their Affiliates and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement or any related agreement or any document furnished hereunder or thereunder.

(h)    Lender Agent May File Proofs of Claim; Credit Bidding.  During the pendency of Borrower's Case, Lender Agent shall be entitled and empowered, by intervention in

DOCS_SF:92776.5 DOCS_SF:92776.6 42335/001

such proceeding or otherwise: (i) to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of this Agreement that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of Lender allowed in such judicial proceeding; and (ii) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same. Any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each constituent Lender to make such payments to Lender Agent and, in the event that Lender Agent shall consent to the making of such payments directly to Lender, to pay to Lender Agent any amount due for the reasonable expenses of Lender Agent's sub-agents and counsel.

Lender Agent is further authorized to consent to or accept or adopt on behalf of any constituent Lender any plan of reorganization, arrangement, adjustment or composition affecting the obligations under this Agreement, subject to the consultation requirements set forth herein.

(i) Borrower and each constituent Lender hereby irrevocably authorize Lender Agent to (a) credit bid and in such manner purchase (either directly or through one or more acquisition vehicles) all or any portion of the Collateral at any sale thereof conducted under the provisions of the Bankruptcy Code, including under Section 363 of the Bankruptcy Code, or (b) credit bid and in such manner purchase (either directly or through one or more acquisition vehicles) all or any portion of the Collateral at any other sale or foreclosure conducted by (or with the consent or at the direction of Lender Agent (whether by judicial action or otherwise) in accordance with applicable law. In connection with any such credit bid and purchase, the obligations owed to each constituent Lender shall be entitled to be, and shall be, credit bid on a ratable basis and each constituent Lender shall be entitled to receive interests (ratably based upon the proportion of their obligations credit bid in relation to the aggregate amount of obligations so credit bid) in the asset or assets so purchased (or in the equity interests of the acquisition vehicle or vehicles that are used to consummate such purchase). Upon request by Lender Agent, each constituent Lender will confirm in writing Lender Agent's authority to release any such Liens on particular types or items of Collateral pursuant to this Section 11.

13. Miscellaneous.

(a) Rights Cumulative. The remedies of Lender as provided in this Agreement shall be cumulative and concurrent; may be pursued singly, successively or together at the sole discretion of Lender, and may be exercised as often as occasion for their exercise shall occur.

(b) GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY, CONSTRUED IN ACCORDANCE WITH, AND ENFORCED UNDER, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW OF SUCH STATE.

(c) JURISDICTION, JURY TRIAL WAIVER, ETC.

(i) EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AGREES THAT ANY LEGAL ACTION OR PROCEEDING ARISING OUT

DOCS_SF:92776.5 DOCS_SF:92776.6 42335/001

OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENTS OR TRANSACTIONS CONTEMPLATED HEREBY SHALL BE BROUGHT IN THE BANKRUPTCY COURT OR, IF THE BANKRUPTCY CASE IS DISMISSED OR CLOSED, IN THE STATE OR FEDERAL COURTS IN SAN FRANCISCO, CALIFORNIA AND HEREBY EXPRESSLY SUBMITS TO THE PERSONAL JURISDICTION AND VENUE OF SUCH COURTS FOR THE PURPOSES THEREOF AND EXPRESSLY WAIVES ANY CLAIM OF IMPROPER VENUE AND ANY CLAIM THAT SUCH COURTS ARE AN INCONVENIENT FORUM. EACH PARTY HEREBY IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OF THE FOREGOING COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO ITS ADDRESS SET FORTH IN SECTION 12(d) OF THIS AGREEMENT, SUCH SERVICE TO BECOME EFFECTIVE AFTER SUCH MAILING.

(ii) EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT, ANY RIGHTS, OR OBLIGATIONS HEREUNDER OR THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS. BORROWER (I) CERTIFIES THAT NEITHER LENDER NOR ANY REPRESENTATIVE OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS AND (II) ACKNOWLEDGES THAT LENDER HAS BEEN INDUCED TO MAKE THIS AGREEMENT BY, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS CONTAINED HEREIN.

(d)     Notices.  All notices, requests, demands, waivers, consents, approvals, payments or other communications which are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon transmission, if sent by facsimile with confirmation of receipt during normal business hours for the recipient or on the next Business Day if sent after normal business hours for the recipient, (c) the next business day, if sent by a reputable overnight courier service such as FedEx or DHL, or (d) on the fifth calendar day following deposit in the United States mail, certified, postage prepaid, return receipt requested, addressed in the case of (c) and (d) as follows:

If to Borrower:

Wrap Media, Inc., .;
Wrap Media, LLC
275 Sacramento Street, Suite 400
San Francisco, CA  94111
Facsimile: 415-633-7780

With a copy to:

Michael St. James
St. James Law, P.C.
22 Battery Street, Suite 888

24

San Francisco, CA 94111
Facsimile: 415-391-7568
Email: michael@stjames-law.com

If to Lender Agent:

Wrap Media Holdings, LLC
~~——————————~~
~~——————————~~
~~——————————~~
~~Facsimile: —————————~~
c/o Innovation Investments, LLC
Mail: P.O. Box 1023
Fedex: 27 Upper Road
Ross, CA 94957
Email: ~~—————————~~ eric@innovationinvestments.com

With a copy to:

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Facsimile: 415-263-7010
Attention: Henry C. Kevane
Email: hkevane@pszjlaw.com

Any party may alter the address to which communications or copies are to be sent by giving notice of such change of address in conformity with the provisions of this Section for the giving of notice.

(e)    Assignment.   This Agreement or any participation in the Advances hereunder may be assigned by Lender in whole or in part to another Lender, with the consent of the Lender Agent, and will inure to the benefit of Lender's successors and assigns. This Agreement may not be assigned by Borrower. Should Lender assign this Agreement in whole or in part, Lender shall provide written notice of such assignment to Borrower.

(f)    Binding Nature of Agreement.   This Agreement shall be binding upon Borrower and its respective successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(g)    Waiver of Claims.   To the extent permitted by applicable law, Borrower waives all claims, damages and demands that it may acquire against Lender arising exclusively out of the exercise by Lender of any rights hereunder; provided, however, that Borrower does not waive any claims, damages and demands arising from Lender's gross negligence or willful misconduct. Lender may exercise all rights and remedies contained in this Agreement, the Interim Order, the Final Order, or provided at law or in equity or otherwise, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except

25

Case: 16-31325    Doc# 33    Filed: 12/19/16    Entered: 12/19/16 11:12:40    Page 43 of 78

any notice required by applicable law and expressly provided herein) to or upon Borrower or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived).

(h)     Joint, Several and Absolute Obligations.  The obligations of Borrower hereunder are the joint and several obligation of each Borrower, and are continuing unconditional obligations that shall not be released by any (i) waiver, deferral or delay by Lender, (ii) release of any obligor or surety or any security for such obligations, (iii) failure to marshal security, (iv) any other change in the terms of this Agreement, the Orders or the other loan documents, including, without limitation, any change to the maturity date, the interest rate, or the amounts available to be borrowed, or (v) all other suretyship defenses and any other matters which may otherwise operate to release Borrower from its obligations hereunder.  With the written consent of Borrower, and subject to the Orders, Lender is hereby authorized, without notice or demand and without affecting the liability of any non-consenting Borrower hereunder, to at any time and from time to time amend, waive, supplement or otherwise modify the terms and conditions of this Agreement, the Orders and the other loan documents including, without limitation, the right to (A) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to, the obligations hereunder or otherwise modify, amend or change the terms of this Agreement or other agreement, document or instrument now or hereafter executed and delivered to Lender; (B) take and hold security or collateral for the payment of the obligations hereunder and exchange, enforce and release any such security or collateral; (C) apply such security or collateral and direct the order or manner of sale thereof as in its sole discretion it may determine; and (D) settle, release, compromise, collect or otherwise liquidate the obligations and any security or collateral therefor in any manner, without affecting or impairing the obligations of Borrower.

(i)     Powers Coupled with an Interest.  All authorizations and agencies herein contained with respect to the Collateral are irrevocable and powers coupled with an interest.

(j)     Modification.  This Agreement may not be modified or amended other than by an agreement in writing signed by Borrower and Lender.

(k)     Headings.  Article and Section headings used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

(l)     Severability.  If any provision of this Agreement is held illegal or unenforceable, the validity of the remaining provisions shall not be affected.

(m)     Lender's Expenses.  Borrower agrees to promptly pay all reasonable costs, charges and expenses incurred following the Filing Date by Lender Agent (including, without limitation, reasonable costs of collection, court costs and reasonable and documented attorneys' fees and disbursements) in connection with the enforcement, exercise, or monitoring of Lender's or Lender Agent's rights under this Agreement.

(n)     USA PATRIOT Act Notice.  Lender hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act, it is required to obtain, verify and

record information that identifies Borrower which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the USA PATRIOT Act.

[signature page follows]

DOCS_SF:92776.5 DOCS_SF:92776.6 42335/001

Case: 16-31325   Doc# 33   Filed: 12/19/16   Entered: 12/19/16 11:12:40   Page 45 of 78

IN WITNESS WHEREOF, Borrower, intending to be legally bound, has duly executed and delivered this Agreement on the date first written above.

BORROWER:

WRAP MEDIA, INC.,
a Delaware corporation, as debtor and debtor-in-possession

By: _____
    Name: _____
    Title: _____

WRAP MEDIA, LLC.,
a Delaware limited liability company, as debtor and debtor-in-possession

By: _____
    Name: _____
    Title: _____

LENDER:

See **Schedule A** attached.

# SCHEDULE A

<u>LENDER</u>:

Wrap Media Holdings, LLC

      By:    Innovation Investments, LLC
      Its:    Sole Manager

      By:_____
      Name: Eric Greenberg
      Its: President

Aggregate Principal Amount of Advances: up to $500,000

_____

By:_____
Name: _____
Title:_____

Aggregate Principal Amount of Advances: up to $[_____]

_____

By:_____
Name: _____
Title:_____

Aggregate Principal Amount of Advances: up to $[_____]

***Lender reserves the right to revise, modify, or amend this Schedule A in its discretion, which may include the addition or removal of lenders.

# Exhibit

# C

$3,000,000

SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION
CREDIT AGREEMENT

**Dated as of December 15, 2016**

**among**

**Wrap Media, Inc., and Wrap Media, LLC**
*as Borrower*

**and**

**the lenders identified on Schedule A hereto**
*as Lender*

This S<small>ECURED</small> S<small>UPER</small>-P<small>RIORITY</small> D<small>EBTOR-IN-</small>P<small>OSSESSION</small> C<small>REDIT</small> A<small>GREEMENT</small> (this **"Agreement"**), dated as of December 15, 2016, is made by and among Wrap Media, Inc., a Delaware corporation, and Wrap Media, LLC, a Delaware limited liability company (together, "**Borrower**"), and the lenders identified on <u>**Schedule A**</u> hereto, as such schedule may be amended from time to time (together, "**Lender**").

## RECITALS

A.     On December 10, 2016 (the "**Petition Date**"), Borrower filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "**Case**") in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "**Bankruptcy Court**");

B.     Borrower has retained possession of its assets and is authorized to continue the operation of its business as a debtor-in-possession;

C.     Subject to entry of the Interim Order (defined below) by the Bankruptcy Court, Borrower shall be authorized to execute and deliver this Agreement and to incur legally enforceable indebtedness and other obligations to Lender that are secured by substantially all assets and properties of Borrower as more particularly described herein; and

D.     Borrower has requested Lender to make postpetition loans on the terms set forth herein, and Borrower and Lender have negotiated in good faith for the extension of such credit.

NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth in this Agreement, and for good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, each of the parties hereto agree as follows:

1.     <u>Definitions</u>.   As used in this Agreement, the following terms shall have the meanings specified below:

"**Administrative Fee**" shall have the meaning assigned to such term in Section 3.

"**Advance**" shall have the meaning assigned to such term in Section 2(a).

"**Affiliates**" shall have the meaning assigned to such term in the Bankruptcy Code and, when used with respect to a specified Person, shall mean another Person that, directly or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with the Person specified.

"**Avoidance Actions**" shall mean claims and causes of action under chapter 5 of the Bankruptcy Code, including without limitation Sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, any other avoidance actions under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, nonbankruptcy law, or any proceeds therefrom.

"**Bankruptcy Code**" shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as enacted in 1978, as the same has heretofore

Case: 16-31325   Doc# 33   Filed: 12/19/16   Entered: 12/19/16 11:12:40   Page 50 of 78

been amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

"**Bankruptcy Court**" shall have the meaning assigned to such term in the recitals or any other court having jurisdiction over the Case from time to time.

"**Budget**" shall mean the weekly budget attached to the Orders prepared and delivered by Borrower reflecting projected cash receipts, operating disbursements, payroll disbursements, non-operating disbursements and cash balances for Borrower commencing with the Petition Date, in each case, in form and substance acceptable to Lender and as may be updated from time to time pursuant to amendments thereto as approved by Lender in its sole discretion.

"**Business Day**" shall mean any day other than a Saturday, Sunday or day on which commercial banks in San Francisco, California are authorized or required by law to close.

"**Carve-Out**" shall mean a carve-out for (i) allowed, accrued, but unpaid professional fees and expenses of Borrower and any official committee of unsecured creditors appointed in the Case, in each case up to the amounts set forth in the Budget (on a cumulative basis) incurred prior to an Event of Default not otherwise cured by Borrower or waived by Lender, (ii) allowed, accrued, but unpaid professional fees and expenses of Borrower or any subsequently appointed chapter 7 trustee incurred in the Case after an Event of Default (that is not waived or cured) not to exceed an amount equal to $35,000, and (iii) the payment of fees pursuant to 28 U.S.C. § 1930; provided that this Carve-Out, any cash collateral and any proceeds of this Agreement may not be used to prosecute, contest or otherwise challenge the validity, perfection, priority, extent, or enforceability of this Agreement, or the Liens securing this facility, or any claims against Lender in its capacity as such.

"**Case**" shall have the meaning assigned to such term in the recitals.

A "**Change in Control**" shall be deemed to have occurred if (a) any "person" or "group" (within the meaning of Rule 13d-5 of the Securities Exchange Act of 1934 as in effect on the date hereof), other than the existing equity holders of Borrower, shall own, directly or indirectly, beneficially or of record, shares representing more than 25% of the aggregate issued and outstanding equity interests of Borrower; (b) any change in control (or similar event, however denominated) with respect to Borrower shall occur under and as defined in any material agreement in respect of which Borrower is a party; or (c) all or substantially all of the assets of Borrower shall be sold, or a chapter 11 plan of reorganization shall be confirmed, without the consent of Lender.

"**Collateral**" shall have the meaning assigned to such term in Section 5(a).

"**Control Account**" shall have the meaning assigned to such term in Section 2(a)(iii).

"**Filing Date**" shall mean the date Borrower files a motion with the Bankruptcy Court for approval of this Agreement.

"**Final Order**" shall mean an order of the Bankruptcy Court, in form and substance reasonably satisfactory to Lender, authorizing, on a permanent basis, Borrower to enter into this Agreement

Case: 16-31325   Doc# 33   Filed: 12/19/16   Entered: 12/19/16 11:12:40   Page 51 of 78

and as to which no stay on its execution or enforcement is in effect and which has not been reversed, modified, vacated or overturned.

"**GAAP**" shall mean generally accepted accounting principles in the United States.

"**Governmental Authority**" shall mean the government of the United States of America or any other nation, any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"**Interim Order**" shall mean an order of the Bankruptcy Court, in form and substance reasonably satisfactory to Lender, authorizing, on an interim basis, Borrower to enter into this Agreement and as to which no stay on its execution or enforcement is in effect and which has not been reversed, modified, vacated or overturned.

"**Intellectual Property**" means any intellectual property including every: (i) patent or patent application, including improvements, divisions, continuations, renewals, reissues, extensions and continuations-in-part; (ii) trademark, service mark and trade name (whether registered or unregistered), and any application for registration of the same; (iii) copyright (whether registered or unregistered) and any application for registration of the same, and moral rights; (iv) mask work and mask work registration application; (v) trade secret, inventions (whether or not patentable), know-how and (vi) any license or other right to use or to grant the use of, or to be the registered owner or user of, any of the foregoing.

"**Junior Collateral**" shall mean (a) any Collateral that is subject to a valid, perfected and unavoidable Lien under the SVB Indebtedness, and (b) any other prepetition and postpetition property of Borrower, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable Liens in existence immediately prior to the Petition Date, or to valid and unavoidable Liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code.

"**Lead Lender**" shall mean Wrap Media Holdings, LLC, or its designee.

"**Lender Agent**" shall have the meaning assigned to such term in Section 12.

"**Lien**" shall mean, with respect to any asset, (a) any mortgage, deed of trust, lien (statutory or otherwise), pledge, hypothecation, encumbrance, collateral assignment, charge or security interest in, on or of such asset, (b) the interest of a vendor or a lessor under any conditional sale agreement, capital lease or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such asset and (c) in the case of securities, any purchase option, call or similar right of a third party with respect to such securities.

"**Material Adverse Effect**" shall mean a material adverse condition or material adverse change in or affecting (a) the validity or enforceability of this Agreement or the rights and remedies of Lender thereunder, (b) the condition (financial or otherwise), assets, operations, prospects or business of Borrower, not contemplated by the Budget, (c) the ability of Borrower to comply

3

Case: 16-31325   Doc# 33   Filed: 12/19/16   Entered: 12/19/16 11:12:40   Page 52 of 78

with its obligations under this Agreement (d) the Court denying all or part of the collateral package set forth herein, and (e) the validity, legality, priority or enforceability of any Lien created by this Agreement; provided that, for purposes of all representations and warranties made in connection with this Agreement, none of the following shall be deemed in itself, or in any combination, to constitute, a "Material Adverse Effect": (i) the filing of the Case and (ii) the conditions, events and changes that ordinarily occur in connection with a filing under chapter 11 of the Bankruptcy Code.

"**Maturity Date**" shall mean the earliest of (i) March 31, 2017, or such later date as may be approved by Lender in writing, (ii) the date on which all the obligations under this Agreement have been indefeasibly repaid in full in cash and all of commitments under this Agreement have been permanently and irrevocably terminated, (iii) the date of the closing of a sale of all or substantially all of Borrower's assets pursuant to Section 363 of the Bankruptcy Code, (iv) the date that a plan of reorganization for Borrower pursuant to chapter 11 of the Bankruptcy Code is declared effective, and (v) the date of termination of the commitments and/or acceleration of any outstanding extensions of credit under this Agreement following the occurrence and during the continuance of an Event of Default.

"**Maximum Loan Amount**" shall have the meaning assigned to such term in Section 2(a).

"**Milestone**" shall have the meaning assigned to such term in Section 8(m).

"**Note**" shall have the meaning assigned to such term in Section 2(b).

"**Orders**" shall mean the Interim Order and the Final Order.

"**Other Taxes**" means all present or future stamp, court or documentary taxes and any other excise, property, intangible, recording, filing or similar levies or charges which arise from any payment made under, from the execution, delivery, performance, enforcement or registration of, from the receipt or perfection of a security interest under, or otherwise with respect to this Agreement.

"**Person**" shall mean any natural person, corporation, trust, business trust, joint venture, joint stock company, association, company, limited liability company, partnership, Governmental Authority or other entity.

"**Petition Date**" shall have the meaning assigned to such term in the recitals.

"**Pre-Petition Payment**" shall mean a payment made by Borrower on account of any pre-petition debt or trade payables or other pre-petition claims against Borrower.

"**Resignation Effective Date**" shall have the meaning assigned to such term in Section 11(f).

"**Senior Collateral**" shall mean all of (a) the Intellectual Property, (b) the Control Account, and (c) any other prepetition and postpetition property of Borrower, whether now existing or hereafter acquired, that is not subject to a valid, perfected and unavoidable Lien in existence immediately prior to the Petition Date.

"**Subsidiary**" shall mean, with respect to any Person, any corporation, partnership, limited liability company, association or other entity (a) of which securities or other ownership interests representing more than 50% of the equity or more than 50% of the ordinary voting power or more than 50% of the general partnership interests are, at the time any determination is being made, owned, controlled or held by such Person or (b) that is, at the time any determination is made, otherwise controlled by the parent or one or more subsidiaries of such Person or by such Person and one or more subsidiaries of such Person.

"**Superpriority Claim**" shall mean a claim against Borrower in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code which is an administrative expense claim having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code.

"**SVB Accounts**" shall have the meaning assigned to such term in Section 5(a).

"**SVB Indebtedness**" shall mean the principal of, accrued but unpaid interest on, and other amounts owed with respect to the indebtedness of Borrower pursuant to that certain Loan and Security Agreement, dated as of March 18, 2016, among Borrower and Silicon Valley Bank.

"**Taxes**" shall have the meaning assigned to such term in Section 4(b).

"**UCC**" shall mean the Uniform Commercial Code in effect in the State of California.

2.    Payment of Interest and Principal.

(a)    Advances.  Until the Maturity Date, and prior to an Event of Default, Borrower may borrow up to three million dollars ($3,000,000) (the "**Maximum Loan Amount**") in one or more drawings by borrowing in accordance with the terms and conditions hereof, including the Budget.  Any amounts borrowed from Lender and repaid by Borrower under this Agreement may not be reborrowed.  Borrowings under this Agreement (each such event being called an "**Advance**") will be available to Borrower as follows:

(i)    upon entry of the Interim Order (in form and substance satisfactory to Lender), but prior to entry of the Final Order, up to three hundred fifty thousand dollars ($350,000);

(ii)    upon entry of the Final Order (in form and substance satisfactory to Lender), up to an additional one hundred fifty thousand dollars ($150,000); and

(iii)    following the foregoing Advances, the balance of the Maximum Loan Amount, reduced by amounts drawn under Sections 2(a)(i) and (a)(ii), solely in the discretion of Lender and at such times and in such amounts as may be agreed by Lender and Borrower.

Each Advance under this Agreement shall be in a minimum amount of $100,000 and shall be made by wire transfer of immediately available funds to a post-petition debtor-in-possession

DOCS_SF:92776.6 42335/001

account of Borrower designated by Lender which is the subject of a control agreement acceptable to Lender (the "**Control Account**"). The Control Account shall not be subject to the rights of, or liens granted to secure, the SVB Indebtedness.

(b)    <u>Making of Advances</u>. In order to request an Advance under this Agreement, Borrower shall provide Lender with a borrowing request at least three (3) Business Days in advance of the requested funding date, which shall (1) be irrevocable, (2) be in writing and signed by Borrower, (3) be in compliance with the Budget, (4) include the amount requested to be borrowed and the requested timing of such borrowing, and (5) state that no Event of Default has occurred or is reasonably likely to occur with the passage of time. The making of any advance hereunder (including the timing thereof and the amount so advanced) shall be subject to Lender's sole determination that the conditions to borrowing hereunder have been satisfied. The Advances may, at the option of Lender, be evidenced by a promissory note in form and substance satisfactory to Lender (each, a "**Note**") and upon the request of Lender, Borrower shall execute and deliver a Note(s) to Lender. Each constituent Lender may assign its interest in any Advance, in whole or in part, to another Lender or to any another Person which, upon such assignment, shall become a constituent Lender.

(c)    <u>Rate of Interest</u>.

(i)    Interest on the unpaid principal amount of any Advance that is outstanding shall accrue at a daily rate from the date of each Advance through and including the date of repayment of such Advance at a rate equal to six percent (6%) per annum. Interest on the Advances will be calculated on the basis of actual days elapsed over a year of 360 days. Interest shall be due and payable in arrears by Borrower monthly on the first Business Day of each month following the initial Advance and on the Maturity Date.

(ii)    During the occurrence and continuance of an Event of Default, additional interest (in addition to the interest payable under Section 2(c)(i)) shall accrue on the unpaid principal and interest of any outstanding Advance at a rate equal to five percent (5%) per annum or the maximum amount of interest allowable by applicable law (the "**Default Rate**"). Any judgments obtained for sums due hereunder shall accrue interest at the Default Rate until paid.

(d)    <u>Payment; Maturity</u>. Payment of the outstanding principal amount of any Advance under this Agreement, together with accrued but unpaid interest due in accordance with Section 2(c) above, plus any accrued, due or outstanding fees and expenses of Lender, shall be due and payable on the Maturity Date and on demand therefor as provided for herein. Borrower shall have the right to prepay at any time, in whole and not in part, without penalty or premium, all of the outstanding principal of any outstanding Advances, together with accrued and unpaid interest thereon. In the event the sum of the outstanding principal balance of the Advances shall at any time exceed the Maximum Loan Amount, Borrower shall immediately prepay the Advances to the extent necessary to eliminate such excess.

(e)    <u>Place and Manner of Payment</u>. Borrower shall make all payments to Lender Agent, on behalf of Lender, at the address of Lender Agent as set forth in Section 12(d) hereof (or to such other place as Lender or Lender Agent, from time to time, shall designate in

<div align="center">6</div>

writing to Borrower) not later than 2:00 p.m., Pacific time, on the date when due in immediately available dollars, without setoff, defense or counterclaim. Any payment received by Lender after 2:00 p.m., Pacific time, may be considered received on the next Business Day in Lender's reasonable discretion. All payments under this Agreement shall be made in U.S. dollars. Except as otherwise expressly provided herein, whenever any payment (including principal of or interest or other amounts) or performance under this Agreement shall become due, or otherwise would occur, on a day that is not a Business Day, such payment or performance may be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of interest or fees, if applicable.

Along with each monthly payment, Borrower shall send to Lender Agent a statement accounting for the charges, Advances, and other transactions occurring among and between Lender and Borrower during the prior month.

(f)     Participation as Lender. The Lead Lender shall have and retain the discretion, in its reasonable judgment, to determine the constituent Lender participants and Advances assigned to each Lender under this Agreement.

(g)     Obligations Absolute. No provision of this Agreement shall alter or impair the obligations of Borrower, which are absolute and unconditional, to pay the principal of and interest of any Advance provided under this Agreement (and any other amounts due hereunder) at the place, times, rate, and in the currency, herein prescribed. Subject to the provisions of Section 11, upon the maturity (whether by acceleration or otherwise) of the obligations under this Agreement of Borrower, Lender shall be entitled to immediate payment of such obligations without further application to or order of the Bankruptcy Court.

3.     Administrative Fee. Upon entry of the Interim Order, Borrower shall pay Lender an administrative fee of $15,000 (the "**Administrative Fee**"). The Administrative Fee shall be fully earned upon payment and shall not be subject to refund or rebate under any circumstances (including, without limitation, the failure of Borrower to obtain entry of a Final Order or the failure of any conditions to the making of an Advance for any reason). Borrower shall not be required to pay any commitment or closing fees to Lender in respect of this Agreement. Borrower acknowledges and agrees that Lender or Lender Agent may appoint an administrative agent for purposes of performing administrative and bookkeeping functions with respect to Lender's rights under this Agreement. The fees of any administrative agent shall be included within the Administrative Fee.

4.     Other Expenses. Borrower shall reimburse Lender Agent on demand for all costs and expenses, including reasonable attorneys' fees, incurred by Lender Agent from and after the Filing Date related to the approval, amendment, administration and enforcement of this Agreement and any other loan documents.

5.     Taxes Generally.

(a)     All payments by or on account of any obligation of Borrower under this Agreement shall be made free and clear of and without deduction for any present or future excise, stamp or other taxes, fees, duties, levies, imposts, charges, deductions, withholdings or

DOCS_SF:92776.6 42335/001

other charges of any nature whatsoever imposed by any taxing authority, but excluding (A) any taxes imposed on or measured by Lender's net income or franchise taxes imposed in lieu of net income taxes, that would not be imposed but for a present or former connection between Lender and the jurisdiction imposing such taxes (other than a connection arising solely from such recipient having executed, delivered or performed its obligations or received a payment under, or enforced, this Agreement), and (B) any United States withholding tax that is imposed on amounts payable to Lender on the date hereof (or at the time Lender designates a new lending office) or is attributable to Lender's failure (other than as a result of a change in applicable law) to comply with Section 4(b) (to the extent legally able to be provided and requested by Borrower), except to the extent that Lender (or its assignor, if any) was entitled, at the time of designation of a new lending office (or assignment), to receive additional amounts from Borrower with respect to such withholding tax pursuant to Section 4(b) (such non excluded items being collectively called "**Taxes**"). If any withholding or deduction from any payment to be made by Borrower hereunder is required in respect of any Taxes pursuant to any applicable law, then Borrower will:

        (i)     make (or cause to be made) such deductions and pay directly to the relevant Governmental Authority the full amount so deducted in accordance with applicable law; and

        (ii)     promptly forward to Lender an official receipt or other documentation satisfactory to Lender evidencing such payment to such Governmental Authority.

In addition, Borrower shall pay (or cause to be paid) any Other Taxes to the relevant Governmental Authority in accordance with applicable law.

        (b)     <u>Tax Forms</u>.  Prior to the first payment of interest under this Agreement, Lender shall deliver to Borrower such certificates, documents or other evidence, as required by the Internal Revenue Code of 1986, as amended (the "**Internal Revenue Code**") or Treasury Regulations issued pursuant thereto, properly completed, currently effective and duly executed by Lender establishing that payments to it under the Agreement are (A) not subject to United States Federal backup withholding tax and, if applicable (B) not subject to United States Federal withholding tax under the Internal Revenue Code.  Lender shall obtain such extensions of the time for filing, and renew such forms and certifications thereof, as may be reasonably requested by Borrower.

        6.     <u>Security</u>.

        (a)     <u>Grant of Security</u>.  Borrower hereby pledges, assigns, transfers and grants to, and creates in favor of Lender, a continuing security interest and lien under the UCC and all other applicable laws in all of the tangible and intangible prepetition and postpetition property of Borrower, in each case whether now existing or hereafter acquired, wherever located, and whether Borrower now has or at any time in the future may acquire any right, title or interest, including the following property  (collectively, the "**Collateral**"), <u>provided that</u>, Collateral shall not include Avoidance Actions and the proceeds thereof, as security for the full and timely payment, observance and performance of any and all obligations under this Agreement (terms

8

used in this Section 5, but not otherwise defined in this Agreement, have the meanings assigned to such terms in the UCC):

(i)  all accounts;

(ii)  all chattel paper;

(iii)  all commercial tort claims from time to time specifically described in writing from Borrower to Lender;

(iv)  all contracts;

(v)  all deposit accounts, including the Control Account, but excluding any Accounts held at Silicon Valley Bank (the "**SVB Accounts**"); provided that, Grantor shall be deemed to have granted a security interest in the SVB Accounts immediately following the satisfaction of the SVB Indebtedness;

(vi)  all documents;

(vii)  all equipment;

(viii)  all fixtures;

(ix)  all general intangibles;

(x)  all goods;

(xi)  all instruments;

(xii)  all insurance;

(xiii)  all Intellectual Property;

(xiv)  all inventory;

(xv)  all investment property;

(xvi)  all letters of credit and letter of credit rights;

(xvii)  all money;

(xviii)  all receivables and receivables records;

(xix)  all securities;

(xx)  proceeds of leasehold interests, including the refund of any security deposits;

9

(xxi)    all books, records, ledger cards, files, correspondence, customer lists, supplier lists, blueprints, technical specifications, manuals, computer software and related documentation, computer printouts, tapes, disks and other electronic storage media and related data processing software and similar items that at any time pertain to or evidence or contain information relating to any of the Collateral or are otherwise reasonably necessary in the collection thereof or realization thereupon; and

(xxii)    to the extent not otherwise included, all other property, whether tangible or intangible, of Borrower and all proceeds, products, accessions, rents and profits of any and all of the foregoing and all collateral support and guarantees given by any Person with respect to any of the foregoing.

For the avoidance of doubt, Lender's rights in the Collateral shall be subject to the rights of the SVB Indebtedness as of the Petition Date, to the extent applicable. Because Intellectual Property is not encumbered by the SVB Indebtedness, Lender's rights in such Collateral shall be senior to the SVB Indebtedness. Lender also shall have a senior Lien against the Control Account.

(b)    Rights in Collateral.  Borrower represents, warrants and covenants that it has and shall have at all times good and valid title to all of the Collateral, free and clear of all liens, claims, charges and encumbrances other than Liens under this Agreement and the SVB Indebtedness, and Borrower shall defend such title against the claims and demands of all other Persons.  Borrower represents and warrants that this Agreement creates a valid security interest in the Collateral and, upon entry of the Interim Order, such security interest shall constitute a perfected lien on and security interest in all Collateral.  Borrower assumes full responsibility for taking any and all steps to preserve its rights with respect to the Collateral.

(c)    Control of Collateral.  Borrower hereby covenants and agrees that, upon entry of the Interim Order, Borrower shall immediately take any and all action(s) necessary for Lender to have full "control" (within the meaning of the applicable UCC) over the Control Account necessary to perfect Lender's security interest therein immediately prior to the making of the first Advance under this Agreement.  Further, Borrower hereby covenants and agrees that it shall further immediately take any and all additional action(s) which Lender deems reasonably necessary in its discretion to ensure that Lender's security interest in all of the remaining collateral provided under this Agreement is perfected.

(d)    Preservation of Security Interest.  Borrower shall diligently preserve and protect Lender's security interest in the Collateral and shall, at its expense, cause such security interest to be and remain perfected so long as this Agreement or any portion thereof or obligation hereunder remains outstanding and unpaid and, for such purposes, Borrower shall, from time to time at Lender's reasonable request and at Borrower's expense, file or record, or cause to be filed or recorded, such instruments, documents and notices (including, without limitation, financing statements and continuation statements) as may be necessary to perfect and continue such security interests.  Borrower shall do all such other acts and things and shall execute and deliver all such other instruments, security agreements and documents as Lender may reasonably request from time to time to protect and preserve the priority of Lender's security interest in the Collateral as a perfected security interest.

(e)  <u>Remedies on Default</u>.  Subject to the Orders and payment of the SVB Indebtedness, if any Event of Default shall occur and be continuing, Lender may (i) to the full extent permitted by law take possession and control of all or any part of the Collateral and any proceeds thereof and the books and records pertaining thereto, with or without judicial process, and (ii) without demand or notice (and if notice is required by law, after ten days prior written notice), proceed to exercise one or more of the rights and remedies accorded to a secured party by the UCC and otherwise by law or by the terms hereof. Lender's rights and remedies shall include without limitation the power to sell all or any portion of the Collateral at public or private sale at such place and time and on such terms as Lender may see fit (subject to the requirements of applicable law).  Without precluding any other methods of sale, the sale of Collateral shall be deemed to have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of secured parties disposing of similar property, but in any event, Lender may sell the Collateral on such terms as Lender may choose without assuming any credit risk and without any obligation to advertise or give notice of any kind not expressly required under this Agreement, by the UCC or otherwise. All of the rights and remedies of Lender under this Agreement shall be cumulative and not exclusive of other rights and remedies which it otherwise would have, whether under the Agreement, the Bankruptcy Code, the UCC or otherwise.  Lender shall not be under any obligation to marshal any assets in favor of Borrower or any other Person or against or in payment of this Agreement.

(f)  <u>Priority</u>.  Subject to the Carve-Out, Borrower hereby covenants, represents and warrants that, upon entry of the Interim Order and the Final Order, the obligations of Borrower under this Agreement:

(1)  pursuant to Section 364(c)(1) of the Bankruptcy Code, shall at all times constitute an allowed Superpriority Claim in the Case;

(2)  pursuant to Sections 364(c)(2) of the Bankruptcy Code, shall be secured by a valid, binding, continuing, enforceable, fully-perfected senior Lien on, and security interest in, the Senior Collateral;

(3)  pursuant to Section 364(c)(3) of the Bankruptcy Code, shall be are secured by a valid, binding, continuing, enforceable, fully-perfected junior Lien on, and security interest, in all Junior Collateral; and

(4)  (I) shall not be subject or subordinate to (A) any Lien or security interest that is avoided and preserved for the benefit of Borrower and its estate under Section 551 of the Bankruptcy Code, or (B) any Liens arising after the Petition Date or (II) subordinated to or made *pari passu* with any other Lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise without the express prior consent of Lender.

7.  <u>Representations and Warranties</u>.  Borrower represents and warrants to Lender as follows:

(a)  <u>Organization</u>.  Borrower is duly organized and validly existing and, to the extent legally applicable, in good standing under the laws of the State of California, and has the

DOCS_SF:92776.6 42335/001

Case: 16-31325   Doc# 33   Filed: 12/19/16   Entered: 12/19/16 11:12:40   Page 60 of 78

requisite power and authorization to own its properties and to carry on its business as now being conducted.

(b) <u>Authorization, Execution, Delivery</u>.  Subject to entry of the Interim Order (or the Final Order, when applicable), Borrower has the requisite power and authority to enter into and perform its obligations under this Agreement, and to perform under this Agreement in accordance with the terms hereof.  Subject to entry of the Interim Order (or the Final Order, when applicable), the execution and delivery of this Agreement by Borrower and the consummation of the transactions contemplated hereby have been duly authorized by Borrower and no further filing, consent, or authorization is required by Borrower or its members.  This Agreement has been duly executed and delivered by Borrower, and constitutes the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms, except as such enforceability may be limited by the Bankruptcy Code.

(c) <u>Noncontravention</u>.  The execution, delivery and performance of this Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby will not result in a violation of any certificate of incorporation, certificate of formation, any certificate of designation or other constituent documents of Borrower, any capital stock of Borrower or bylaws of Borrower.

(d) <u>Governmental Approvals</u>.  Other than entry of the Interim Order (or the Final Order, when applicable), no action, consent or approval of, registration or filing with, permit from, notice to, or any other action by, any Governmental Authority is or will be required in connection with this Agreement, except for such as have been made or obtained and are in full force and effect.

(e) <u>No Material Adverse Change</u>.  No event, change or condition has occurred since the Petition Date that has caused, or could reasonably be expected to cause, a Material Adverse Effect other than events, changes or conditions that ordinarily would occur in connection with a filing under chapter 11 of the Bankruptcy Code.

(f) <u>Use of Proceeds</u>.  The borrowings under this Agreement shall be used (a) to pay interest, charges, fees and expenses (including attorneys' fees for counsel to Lender) under this Agreement, (b) to fund post-petition operating expenses and other general corporate needs of Borrower, (c) to pay certain administrative expenses of the Case, including reasonable fees and expenses of professionals, and (d) to make such other court-approved payments, in each case, solely in the manner contemplated by and in amounts consistent with the Budget, subject to any permitted variances.

(g) <u>Tax Returns</u>.  Borrower has timely filed or timely caused to be filed all federal and state income tax returns and other material tax returns required to have been filed by it and not subject to any extension and all such tax returns are correct and complete in all material respects.  Borrower has timely paid or caused to be timely paid or adequately reserved for all income and franchise taxes due and payable by it (also including and not limited to any and all withholding taxes, sales or use taxes, and all other "trust fund" taxes) and all assessments received by it, except taxes that are being contested in good faith by appropriate proceedings and for which Borrower shall have set aside on its books adequate reserves in accordance with

DOCS_SF:92776.6 42335/001

GAAP. Borrower (a) does not intend to treat the proceeds of this Agreement or any of the transactions contemplated by this Agreement as being a "reportable transaction" (within the meaning of Treasury Regulation Section 1.6011-4) (b) is not aware of any facts or events that would result in such treatment, and (b) has never "participated" in a "listed transaction" (within the meaning of Treasury Regulation Section 1.6011-4). Borrower is not party to any tax sharing agreement with any Person.

(h)     <u>No Material Misstatements</u>.  None of the information, reports, financial statements, exhibits or schedules furnished by or on behalf of Borrower for use in connection with this Agreement or in connection with the negotiation of this Agreement or included therein or delivered pursuant thereto (as modified or supplemented by other information so furnished), taken as a whole, contained or contains any material misstatement of fact or omitted or omits to state any material fact necessary to make the statements therein, in the light of the circumstances under which they were, are or will be made, not misleading; provided that to the extent any such information, reports, financial statements, exhibits or schedules were based upon or constitute a forecast or projection, Borrower represents only that it acted in good faith and utilized reasonable assumptions in light of the conditions existing at the time of preparation. The forecasts and projections that have been or will be made available to Lender by Borrower have been or will be prepared in good faith based upon reasonable assumptions at the time of delivery.

(i)     <u>Liens</u>.  There are no Liens of any nature whatsoever on any of the properties or assets of Borrower other than Liens otherwise permitted by this Agreement and the SVB Indebtedness.

8.     <u>Conditions Precedent</u>.  The making of borrowings under this Agreement by Lender is subject to the satisfaction of the following conditions:

(a)     <u>All Advances</u>.  On the date of each Advance:

(i)     The representations and warranties set forth herein shall be true and correct in all material respects on and as of the date of such Advance with the same effect as though made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct in all material respects on and as of such earlier date (except that such materiality qualifiers shall not be applicable to any representation and warranty that is already qualified by materiality).

(ii)     At the time of and immediately after giving effect to such Advance, no Event of Default shall have occurred and be continuing (unless otherwise waived in writing by Lender).

(iii)     At the time of such Advance, either (a) the Interim Order shall be in full force and effect or (b) if the date of such requested extension of credit is more than 30 calendar days after the Petition Date, the Final Order shall have been entered.

(iv)     The making of such Advance shall not violate any requirement of applicable law and shall not be enjoined, temporarily, preliminarily or permanently.

(v)    Each Advance shall be deemed to constitute a representation and warranty by Borrower on the date of such Advance as to the matters specified in this Section 7(a).

(b)    <u>Deliverables</u>.  On or prior to the making of the initial Advance under this Agreement:

(i)    Lender shall have received this Agreement, executed and delivered by a duly authorized officer of Borrower, and any deliverables required thereunder.

(ii)    Lender shall have been granted perfected Liens on the Collateral and shall have received a customary control agreement for the Control Account.

(iii)    There shall be no litigation, governmental, administrative or judicial action, actual or threatened, that could reasonably be expected to restrain, prevent or impose burdensome conditions on Borrower, this Agreement, or the other transactions contemplated hereby, including the repayment hereof.

(iv)    Lender shall have received, with respect to Borrower, (a) customary officer's certificates and other evidence of corporate authorization (including applicable constituent documents), and (b) a notice of borrowing.

(v)    Lender shall have received and approved the Budget in its reasonable discretion.

(vi)    Lender shall have received evidence satisfactory to Lender in its reasonable discretion of the entry of the Interim Order (i) approving this Agreement, (ii) granting the Superpriority Claim status and Liens described herein and in the Interim Order, and (iii) finding that Borrower has acted in "good faith" pursuant to Section 364(e) of the Bankruptcy Code.

(vii)    All "first day orders" will be in form and substance reasonably satisfactory to Lender.

9.    <u>Affirmative Covenants</u>.  Borrower covenants and agrees with Lender that so long as this Agreement shall remain in effect and until this Agreement has been terminated and the principal of and interest hereunder, all fees and all other expenses or amounts payable hereunder shall have been paid in full, Borrower will:

(a)    <u>Existence; Businesses and Properties</u>.

(i)    Except as occasioned by the Case, do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence.

(ii)    Except to the extent failure to do so could not reasonably be expected to have a Material Adverse Effect or would violate the Orders, (i) do or cause to be done all things necessary to obtain, preserve, renew, extend and keep in full force and effect the rights, licenses, permits, franchises, authorizations, patents, copyrights, trademarks and trade

14

names used in the conduct of its business; (ii) comply with all applicable laws, rules, regulations and decrees and orders of any Governmental Authority, whether now in effect or hereafter enacted; (iii) comply with the terms of, and enforce its rights under, each lease of real property and each other agreement so as not to permit any uncured default on its part to exist thereunder; and (iv) at all times maintain and preserve all of its property and keep such property in good repair, working order and condition and from time to time make, or cause to be made, all needful and proper repairs, renewals, additions, improvements and replacements thereto necessary in order that the business carried on in connection therewith may be properly conducted at all times.

(b)     Insurance.  Keep its insurable properties adequately insured at all times by financially sound and reputable insurers to such extent and against such risks (and with such deductibles, retentions and exclusions), including fire and other risks insured against by extended coverage, as is reasonable and customary for companies in the same or similar businesses operating in the same or similar locations, including public liability insurance against claims for personal injury or death or property damage occurring upon, in, about or in connection with the use of any properties owned, occupied or controlled by it; maintain such other insurance as may be required by law; and maintain such other insurance as otherwise required by the this Agreement (and comply with all covenants in the this Agreement with respect thereto).

(c)     Obligations and Taxes.  Except to the extent otherwise required by the Orders, (i) pay its material obligations arising after the Petition Date that are provided in the Budget promptly and in accordance with their terms, subject to a permitted variance of fifteen percent (15%) for all weekly disbursements in the aggregate or such other variance as may be requested by Borrower and approved by Lender; (ii) timely file (after giving effect to any valid extensions of time in which to file such filings) all of its tax returns; and (iii) pay and discharge promptly when due all material taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits or in respect of its property, arising after the Petition Date before the same shall become delinquent or in default (also including and not limited to any and all withholding taxes, sales or use taxes, and all other "trust fund" taxes) as well as all lawful claims for labor, materials and supplies or otherwise that, if unpaid, would reasonably be expected to give rise to a Lien upon such properties or any part thereof; provided, however, that such payment and discharge shall not be required with respect to any such material tax, assessment, charge, levy or claim so long as the validity or amount thereof shall be contested in good faith by appropriate proceedings and Borrower shall have set aside on its books adequate reserves with respect thereto in accordance with GAAP.

(d)     Financial Documents.  Furnish to Lender:

(i)     as soon as possible after preparation, copies of financial statements otherwise prepared in the ordinary course of business;

(ii)     the Budget and updates as requested by Lender;

(iii)     not later than the Wednesday following the end of each calendar week beginning with the calendar week during which the Interim Order is entered, provide Lender with a line-by-line variance report detailing any variances from the Budget in receipts, disbursements, or both, for such calendar week, and comparing actual cash receipts and

15

disbursements to amounts projected in the Budget, in form and scope reasonably acceptable to Lender;

(iv)     if applicable, promptly after the same become publicly available, copies of all periodic and other reports, proxy statements and other materials filed by Borrower with the Securities and Exchange Commission; and

(v)     copies of all material documents filed by or on behalf of with the Bankruptcy Court in the Case, or distributed by or on behalf of Borrower to any official committee appointed in the Case;

(e)     <u>Litigation and Other Notices</u>.  Furnish to Lender prompt written notice of the following:

(i)     any Event of Default, specifying the nature and extent thereof and the corrective action (if any) taken or proposed to be taken with respect thereto; and

(ii)     the filing or commencement of, or any threat or notice of intention of any Person to file or commence, any action, suit or proceeding, whether at law or in equity or by or before any arbitrator or Governmental Authority, against Borrower that could reasonably be expected to result in a Material Adverse Effect.

(f)     <u>Information Regarding Collateral</u>.  Furnish to Lender prompt written notice of any change in Borrower's (i) corporate name, (ii) jurisdiction of organization or any office in which it maintains books or records relating to the Collateral owned by it, (iii) identity or corporate structure, or (iv) organizational identification number.  Borrower agrees to promptly to notify Lender if any material portion of the Collateral is damaged or destroyed.

(g)     <u>Maintaining Records; Access to Finances</u>.  Keep proper books of record and account in which materially full, true and correct entries in conformity with GAAP are made of all material dealings and transactions in relation to its business and activities.  Borrower will permit any representatives designated by Lender to visit and inspect its respective financial records and properties at reasonable times during normal business hours on reasonable notice and as often as reasonably requested and to make extracts from and copies of such financial records, and permit any representatives designated by Lender to discuss the affairs, finances and condition of Borrower with the officers thereof and independent accountants therefor provided that (i) any such visit or inspection shall be coordinated through Lender and (ii) in respect of any such discussions with any independent accountants, Borrower, as the case may be, shall have received reasonable advance notice thereof and a reasonable opportunity to participate therein.

(h)     <u>Limitation on Use of Proceeds</u>.  The proceeds of Advances made hereunder will be used only (a) to finance the operations of Borrower in the ordinary course of business and in accordance with the Budget, (b) to pay fees and expenses in connection with the transactions contemplated hereby and, to the extent approved by the Bankruptcy Court and as set forth in the Orders, in connection with the Case, (c) for other payments permitted to be made by the Orders and any other order of the Bankruptcy Court, and (d) for general corporate purposes, in each case to the extent expressly permitted under applicable law, this Agreement, the Orders and in accordance with the Budget.  No part of the proceeds of any Advance will be used,

16

whether directly or indirectly: (i) to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the interests of Lender or its rights and remedies under this Agreement or any of the Orders, including, without limitation, for the payment of any services rendered by the professionals retained by Borrower or any official committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the obligations hereunder or the Liens securing same, (y) for monetary, injunctive or other affirmative relief against Lender or the Collateral, or (z) preventing, hindering or otherwise delaying the exercise by Lender of any rights and remedies under the Orders, this Agreement or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the court or otherwise) by Lender upon any of the Collateral; (ii) to make any distribution under a plan of reorganization in the Case; and (iii) unless otherwise approved by the Bankruptcy Court, to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the Lender.

(i)     Further Assurances.   From time to time duly authorize, execute and deliver, or cause to be duly authorized, executed and delivered, such instruments, certificates, financing statements, agreements or documents, and take all such actions (including filing UCC and other financing statements), as Lender may reasonably request, for the purposes of implementing or effectuating the provisions of this Agreement, or documenting (other than the Orders), perfecting or renewing the rights of Lender with respect to the Collateral (or with respect to any additions thereto or replacements or proceeds or products thereof or with respect to any other property or assets hereafter acquired by Borrower which may be deemed to be part of the Collateral), and the Orders.  Upon the exercise by Lender of any power, right, privilege or remedy pursuant to this Agreement or the Orders which requires any consent, approval, recording, qualification or authorization of any Governmental Authority, Borrower will execute and deliver, or will cause the execution and delivery of, all applications, certifications, instruments and other documents and papers that Lender may be required to obtain from Borrower for such governmental consent, approval, recording, qualification or authorization.

(j)     Budget.

(i)     Operate in accordance with the Budget and such Budget will take into account all funds received by Borrower, subject to a permitted variance of fifteen percent (15%) for all weekly disbursements in the aggregate or such other variance as may be requested by Borrower and approved by Lender.

(ii)     In the event that management of Borrower determines it necessary to take any action or make any payment in an emergency situation, management will obtain the prior written consent of Lender, which consent may be obtained via e-mail.

(k)     DIP Milestones.   Obtain entry of the (x) Interim Order by the Bankruptcy Court within five (5) Business Days following the Petition Date and (y) Final Order by the Bankruptcy Court no later than thirty (30) calendar days following the date of the Interim Order, in each case on terms that are in all respects satisfactory to Lender, provided that, Lender may

17

Case: 16-31325   Doc# 33   Filed: 12/19/16   Entered: 12/19/16 11:12:40   Page 66 of 78

agree, in its sole discretion, to extend the applicable timing in connection with any of the foregoing milestones or waive any such milestone.

10. _Negative Covenants_. Borrower covenants and agrees that, so long as this Agreement shall remain in effect and until this Agreement has been terminated and the principal of and interest hereunder, all fees and all other expenses or amounts payable hereunder have been indefeasibly paid in full, Borrower will not, without the prior written consent of Lender:

(a) _Business of Borrower_. With respect to Borrower, engage at any time in any business or business activity other than the business conducted by it as of the date hereof and business activities reasonably incidental or related thereto.

(b) _Pre-Petition Payments_.

(i) Make Pre-Petition Payments, other than Pre-Petition Payments which are authorized by the Bankruptcy Court pursuant to authority granted by the Orders, the "first-day orders" or other orders in form and substance satisfactory to Lender in its reasonable discretion.

(ii) Pay any management, consulting or similar fees to any executives, directors, officers or shareholders of Borrower, in any case by direct payment or otherwise, or enter into any employment or consulting agreements with current management, shareholders or directors of Borrower, in any case, unless (a) contemplated by the Budget or (b) made with the prior written consent of Lender.

(c) _Bankruptcy Case Matters_.

(i) Seek, consent to or fail to oppose any modification, stay, vacatur or amendment of the Orders without the prior written consent of Lender.

(ii) Seek, consent to or fail to oppose the modification, alteration or impairment in any manner of the Liens, security interests, rights or remedies granted to Lender pursuant to the Orders and this Agreement.

(d) _Subsidiaries_. Form or create a Subsidiary of Borrower following the Petition Date without the consent of Lender.

11. _Events of Default; Remedies_.

(a) _Events of Default_. The following shall constitute events of default ("**Events of Default**") under this Agreement:

(i) a default in the payment of any interest on any of the Advances as and when the same shall become due and payable;

(ii) a default in the payment of all or any part of the principal of any of the Advances as and when the same shall become due and payable either at maturity, by declaration, acceleration or otherwise, whether or not prohibited by any provisions hereof;

18

(iii)    a failure on the part of Borrower to duly observe or perform any of the covenants or agreements on the part of Borrower contained in this Agreement;

(iv)    any representation, warranty or statement made or deemed made by Borrower herein shall prove to be false or misleading in any material respect when so made;

(v)    a Material Adverse Effect in the financial condition of Borrower, as determined by Lender in its reasonable discretion;

(vi)    the appointment of an examiner with expanded powers, the appointment of a chapter 11 trustee in Borrower's Case, conversion of the chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or dismissal of the chapter 11 Case by order of the Bankruptcy Court;

(vii)    an order of the Bankruptcy Court shall be entered granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to permit foreclosure on account of the SVB Indebtedness;

(viii)    any order of the Bankruptcy Court shall be entered amending, modifying, superseding, staying, reversing or vacating any of the Orders or having the effect of doing so without the prior written consent of Lender;

(ix)    the failure by Borrower to achieve the milestones described in Section 8(l);

(x)    the failure of Borrower to perform Bankruptcy Court orders in any material respect; and

(xi)    any breach by Borrower of any material term or condition of the Interim Order or the Final Order, as applicable.

(b)    Remedies.

(i)    Acceleration.  Subject to the Orders, after the occurrence and continuance of an Event of Default and upon five (5) Business Days' written notice following such Event of Default from Lender to Borrower, if Borrower has not within such five (5) day period either (A) cured any such Event of Default; or (B) obtained an order from the Bankruptcy Court excusing Borrower's performance or otherwise determining that no such Event of Default has occurred, Lender shall have the right to declare the entire unpaid principal amount of any outstanding advances under the DIP Facility, together with all accrued but unpaid interest and any unpaid fees and expenses incurred by Lender, immediately due and payable.  Borrower waives presentment, protest, demand, notice of dishonor and all other requirements of any kind. Lender's failure to exercise any right or remedy under the DIP Facility or acceptance of partial or delinquent payments, shall not be a waiver of any obligation of Borrower or right of Lender, or constitute Lender's waiver of any other default subsequently occurring.

(ii)    Automatic Stay.  Subject to the Orders, after the occurrence and continuance of an Event of Default and upon seven (7) Business Days' written notice following

19

such Event of Default from Lender to Borrower, if Borrower has not within such seven (7) day period otherwise obtained an order from the Court maintaining the automatic stay, the automatic stay provided in Section 362 of the Bankruptcy Code shall be deemed modified and Lender shall have the right to exercise any of the remedies under the DIP Facility loan documents, including any rights and remedies provided herein and the right to realize on the DIP Collateral without further relief or order of this Court.

(iii)     The remedies set forth herein shall be in addition to, and not in lieu of, any other additional rights or remedies to which Lender may be entitled, whether at law, in equity or otherwise. After the occurrence and continuance of an uncured Event of Default and upon written notice of such Event of Default from Lender to Borrower, Lender shall have the right to take all or any actions and exercise any remedies available to a secured party under this Agreement or applicable law or in equity subject to any requirements set forth in the Orders and the automatic stay provided in Section 362 of the Bankruptcy Code shall be deemed automatically vacated and Lender shall have the right to exercise any of the remedies under this Agreement, including any rights and remedies provided in the Orders and the right to realize on all of the Collateral without further relief or order of the Bankruptcy Court except as provided in the Orders.

(iv)     Subject to the Orders, Lender shall have the right to credit bid this Agreement under Section 363 of the Bankruptcy Code or pursuant to a plan of reorganization in Borrower's Case.

12.     <u>Lender Agent</u>.  Lender hereby irrevocably appoints, designates and authorizes Lead Lender to act on its behalf as Lender Agent hereunder ("**Lender Agent**") and authorizes Lender Agent to take such actions and to exercise such powers as are delegated to Lender by the terms hereof, together with such actions and powers as are reasonably incidental thereto. Lender Agent shall consult in good faith with Lender as may be necessary or appropriate in the reasonable discretion of Lender Agent with respect to the exercise of Lender's rights and obligations under this Agreement. It is understood and agreed that the use of the term "agent" herein (or any other similar term) with reference to Lender Agent is not intended to connote any fiduciary or other implied (or express) obligations arising under agency doctrine of any applicable law.

(a)     <u>Collateral Agent</u>.  Lender Agent shall also act as the "collateral agent" under this Agreement, and each constituent of Lender hereby irrevocably appoints and authorizes Lender Agent to act as the agent of Lender for purposes of acquiring, holding and enforcing any and all Liens on Collateral granted by Borrower to secure any of the obligations under this Agreement, together with such powers and discretion as are reasonably incidental thereto. In this connection, Lender Agent, as "collateral agent" and any co-agents, sub-agents and attorneys-in-fact appointed by Lender Agent for purposes of holding or enforcing any Lien on the Collateral (or any portion thereof) granted under this Agreement, or for exercising any rights and remedies thereunder at the direction of Lender Agent), shall be entitled to the benefits of all provisions of this Section 11 as though such co-agents, sub-agents and attorneys-in-fact were the "collateral agent" under this Agreement) as if set forth in full herein with respect thereto. Lender Agent shall not be responsible for or have a duty to ascertain or inquire into any representation or warranty regarding the existence, value or collectability of the Collateral, the existence, priority

DOCS_SF:92776.6 42335/001

or perfection of Lender Agent's Lien thereon, or any certificate prepared by Borrower in connection therewith, nor shall Lender Agent be responsible or liable to Lender for any failure to monitor or maintain any portion of the Collateral.

(b) <u>Exculpatory Provisions</u>. Lender Agent (a) shall not be subject to any fiduciary or other implied duties, regardless of whether an Event of Default has occurred and is continuing, (b) shall not have any duty to take any discretionary action or exercise any discretionary powers; and (c) shall be fully justified in failing or refusing to take any action under this Agreement. Neither Lender Agent nor any of its Affiliates shall be liable to Lender and/or Borrower for any action taken or not taken by Lender Agent under or in connection with this Agreement or the transactions contemplated hereby in the absence of its own gross negligence or willful misconduct as determined by a court of competent jurisdiction by final and nonappealable judgment. Any such action taken or failure to act pursuant to the foregoing shall be binding on Lender. Lender Agent shall be deemed not to have knowledge of any Event of Default unless and until notice describing such Event of Default is given in writing to Lender Agent by Borrower.

(c) <u>Indemnity</u>. Lender agrees to indemnify Lender Agent, its Affiliates and their respective officers, partners, directors, trustees, employees and agents (each, an "<u>Indemnitee Agent Party</u>"), to the extent that such Indemnitee Agent Party shall not have been reimbursed by Borrower, for and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses (including counsel fees and disbursements) or disbursements of any kind or nature whatsoever which may be imposed on, incurred by or asserted against such Indemnitee Agent Party in exercising its powers, rights and remedies hereunder or otherwise in its capacity as such Indemnitee Agent Party in any way relating to or arising out of this Agreement, provided, Lender shall not be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from such Indemnitee Agent Party's gross negligence or willful misconduct, as determined by a court of competent jurisdiction in a final, non-appealable order.

(d) <u>Reliance by Lender Agent</u>. Lender Agent shall be entitled to rely upon, and shall be fully protected in relying and shall not incur any liability for relying upon, any notice, request, certificate, communication, consent, statement, instrument, document or other writing (including any electronic message, Internet or intranet website posting or other distribution) believed by it to be genuine and to have been signed, sent or otherwise authenticated by the proper Person. Lender Agent also may rely upon any statement made to it orally or by telephone and believed by it to have been made by the proper Person, and shall be fully protected in relying and shall not incur any liability for relying thereon. In determining compliance with any condition hereunder to the making of an Advance that by its terms must be fulfilled to the satisfaction of any constituent Lender, Lender Agent may presume that such condition is satisfactory to such Lender unless Lender Agent shall have received notice to the contrary from such Lender prior to the making of such Advance. Lender Agent may consult with legal counsel (who may be counsel for Lender), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

<div align="center">21</div>

(e)     Delegation of Duties.  Lender Agent may perform any and all of its duties and exercise its rights and powers hereunder by or through any one or more sub-agents appointed by Lender Agent.  Lender Agent and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective Affiliates.  The exculpatory provisions of this Section shall apply to any such sub-agent and to the Affiliates of Lender Agent and any such sub-agent.  Lender Agent shall not be responsible for the negligence or misconduct of any sub-agents except to the extent that a court of competent jurisdiction determines in a final and nonappealable judgment that Lender Agent acted with gross negligence or willful misconduct in the selection of such sub-agents.

(f)     Resignation.  Lender Agent may at any time give notice of its resignation to Lender and Borrower.  Upon receipt of any such notice of resignation, Lender shall have the right to appoint a successor.  If no such successor shall have been so appointed by Lender and shall have accepted such appointment within thirty (30) days after the retiring Lender Agent gives notice of its resignation (or such earlier day as shall be agreed by the Lenders) (the "**Resignation Effective Date**"), then the retiring Lender Agent may (but shall not be obligated to) on behalf of Lender, appoint a successor Lender Agent.  Whether or not a successor has been appointed, such resignation shall become effective in accordance with such notice on the Resignation Effective Date.  With effect from the Resignation Effective Date (i) the retiring Lender Agent shall be discharged from its duties and obligations hereunder (except that in the case of any collateral security held by Lender Agent on behalf of Lender under this Agreement, the retiring Lender Agent shall continue to hold such collateral security until such time as a successor Lender Agent is appointed) and (ii) except for any indemnity payments or other amounts then owed to the retiring Lender Agent, all payments, communications and determinations provided to be made by, to or through Lender Agent shall instead be made by or to Lender directly, until such time, if any, as successor Lender Agent is appointed as provided for above.  Upon the acceptance of a successor's appointment as Lender Agent hereunder, such successor shall succeed to and become vested with all of the rights, powers, privileges and duties of the retiring Lender Agent (other than any rights to indemnity payments or other amounts owed to the retiring Lender Agent as of the Resignation Effective Date).  After the retiring Lender Agent's resignation hereunder, the provisions of this Section shall continue in effect for the benefit of such retiring Lender Agent, its sub-agents and their respective Affiliates in respect of any actions taken or omitted to be taken by any of them while the retiring Lender Agent was acting as Lender Agent.

(g)     Non-Reliance on Lender Agent.  Each constituent Lender acknowledges that it has, independently and without reliance upon Lender Agent or any other Lender or any of their Affiliates and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  Each Lender also acknowledges that it will, independently and without reliance upon Lender Agent or any other constituent Lender or any of their Affiliates and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement or any related agreement or any document furnished hereunder or thereunder.

(h)     Lender Agent May File Proofs of Claim; Credit Bidding.  During the pendency of Borrower's Case, Lender Agent shall be entitled and empowered, by intervention in

such proceeding or otherwise: (i) to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of this Agreement that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of Lender allowed in such judicial proceeding; and (ii) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same. Any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each constituent Lender to make such payments to Lender Agent and, in the event that Lender Agent shall consent to the making of such payments directly to Lender, to pay to Lender Agent any amount due for the reasonable expenses of Lender Agent's sub-agents and counsel.

Lender Agent is further authorized to consent to or accept or adopt on behalf of any constituent Lender any plan of reorganization, arrangement, adjustment or composition affecting the obligations under this Agreement, subject to the consultation requirements set forth herein.

(i) Borrower and each constituent Lender hereby irrevocably authorize Lender Agent to (a) credit bid and in such manner purchase (either directly or through one or more acquisition vehicles) all or any portion of the Collateral at any sale thereof conducted under the provisions of the Bankruptcy Code, including under Section 363 of the Bankruptcy Code, or (b) credit bid and in such manner purchase (either directly or through one or more acquisition vehicles) all or any portion of the Collateral at any other sale or foreclosure conducted by (or with the consent or at the direction of Lender Agent (whether by judicial action or otherwise) in accordance with applicable law. In connection with any such credit bid and purchase, the obligations owed to each constituent Lender shall be entitled to be, and shall be, credit bid on a ratable basis and each constituent Lender shall be entitled to receive interests (ratably based upon the proportion of their obligations credit bid in relation to the aggregate amount of obligations so credit bid) in the asset or assets so purchased (or in the equity interests of the acquisition vehicle or vehicles that are used to consummate such purchase). Upon request by Lender Agent, each constituent Lender will confirm in writing Lender Agent's authority to release any such Liens on particular types or items of Collateral pursuant to this Section 11.

13. <u>Miscellaneous</u>.

(a) <u>Rights Cumulative</u>. The remedies of Lender as provided in this Agreement shall be cumulative and concurrent; may be pursued singly, successively or together at the sole discretion of Lender, and may be exercised as often as occasion for their exercise shall occur.

(b) <u>GOVERNING LAW</u>. THIS AGREEMENT SHALL BE GOVERNED BY, CONSTRUED IN ACCORDANCE WITH, AND ENFORCED UNDER, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW OF SUCH STATE.

(c) <u>JURISDICTION, JURY TRIAL WAIVER, ETC</u>.

(i) EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AGREES THAT ANY LEGAL ACTION OR PROCEEDING ARISING OUT

DOCS_SF:92776.6 42335/001

OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENTS OR TRANSACTIONS CONTEMPLATED HEREBY SHALL BE BROUGHT IN THE BANKRUPTCY COURT OR, IF THE BANKRUPTCY CASE IS DISMISSED OR CLOSED, IN THE STATE OR FEDERAL COURTS IN SAN FRANCISCO, CALIFORNIA AND HEREBY EXPRESSLY SUBMITS TO THE PERSONAL JURISDICTION AND VENUE OF SUCH COURTS FOR THE PURPOSES THEREOF AND EXPRESSLY WAIVES ANY CLAIM OF IMPROPER VENUE AND ANY CLAIM THAT SUCH COURTS ARE AN INCONVENIENT FORUM.  EACH PARTY HEREBY IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OF THE FOREGOING COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO ITS ADDRESS SET FORTH IN SECTION 12(d) OF THIS AGREEMENT, SUCH SERVICE TO BECOME EFFECTIVE AFTER SUCH MAILING.

(ii)     EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT, ANY RIGHTS, OR OBLIGATIONS HEREUNDER OR THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS.  BORROWER (I) CERTIFIES THAT NEITHER LENDER NOR ANY REPRESENTATIVE OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS AND (II) ACKNOWLEDGES THAT LENDER HAS BEEN INDUCED TO MAKE THIS AGREEMENT BY, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS CONTAINED HEREIN.

(d)     Notices.  All notices, requests, demands, waivers, consents, approvals, payments or other communications which are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon transmission, if sent by facsimile with confirmation of receipt during normal business hours for the recipient or on the next Business Day if sent after normal business hours for the recipient, (c) the next business day, if sent by a reputable overnight courier service such as FedEx or DHL, or (d) on the fifth calendar day following deposit in the United States mail, certified, postage prepaid, return receipt requested, addressed in the case of (c) and (d) as follows:

If to Borrower:

Wrap Media, Inc.
Wrap Media, LLC
275 Sacramento Street, Suite 400
San Francisco, CA  94111
Facsimile: 415-633-7780

With a copy to:

Michael St. James
St. James Law, P.C.
22 Battery Street, Suite 888

24

San Francisco, CA  94111
Facsimile:  415-391-7568
Email:  michael@stjames-law.com

If to Lender Agent:

Wrap Media Holdings, LLC
c/o Innovation Investments, LLC
Mail:  P.O. Box 1023
Fedex:  27 Upper Road
Ross, CA  94957
Email:  eric@innovationinvestments.com

With a copy to:

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Facsimile:     415-263-7010
Attention:     Henry C. Kevane
Email:         hkevane@pszjlaw.com

Any party may alter the address to which communications or copies are to be sent by giving notice of such change of address in conformity with the provisions of this Section for the giving of notice.

(e)     Assignment.  This Agreement or any participation in the Advances hereunder may be assigned by Lender in whole or in part to another Lender, with the consent of the Lender Agent, and will inure to the benefit of Lender's successors and assigns.  This Agreement may not be assigned by Borrower.  Should Lender assign this Agreement in whole or in part, Lender shall provide written notice of such assignment to Borrower.

(f)     Binding Nature of Agreement.  This Agreement shall be binding upon Borrower and its respective successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(g)     Waiver of Claims.  To the extent permitted by applicable law, Borrower waives all claims, damages and demands that it may acquire against Lender arising exclusively out of the exercise by Lender of any rights hereunder; provided, however, that Borrower does not waive any claims, damages and demands arising from Lender's gross negligence or willful misconduct.  Lender may exercise all rights and remedies contained in this Agreement, the Interim Order, the Final Order, or provided at law or in equity or otherwise, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by applicable law and expressly provided herein) to or upon Borrower or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived).

DOCS_SF:92776.6 42335/001

(h) <u>Joint, Several and Absolute Obligations</u>. The obligations of Borrower hereunder are the joint and several obligation of each Borrower, and are continuing unconditional obligations that shall not be released by any (i) waiver, deferral or delay by Lender, (ii) release of any obligor or surety or any security for such obligations, (iii) failure to marshal security, (iv) any other change in the terms of this Agreement, the Orders or the other loan documents, including, without limitation, any change to the maturity date, the interest rate, or the amounts available to be borrowed, or (v) all other suretyship defenses and any other matters which may otherwise operate to release Borrower from its obligations hereunder. With the written consent of Borrower, and subject to the Orders, Lender is hereby authorized, without notice or demand and without affecting the liability of any non-consenting Borrower hereunder, to at any time and from time to time amend, waive, supplement or otherwise modify the terms and conditions of this Agreement, the Orders and the other loan documents including, without limitation, the right to (A) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to, the obligations hereunder or otherwise modify, amend or change the terms of this Agreement or other agreement, document or instrument now or hereafter executed and delivered to Lender; (B) take and hold security or collateral for the payment of the obligations hereunder and exchange, enforce and release any such security or collateral; (C) apply such security or collateral and direct the order or manner of sale thereof as in its sole discretion it may determine; and (D) settle, release, compromise, collect or otherwise liquidate the obligations and any security or collateral therefor in any manner, without affecting or impairing the obligations of Borrower.

(i) <u>Powers Coupled with an Interest</u>. All authorizations and agencies herein contained with respect to the Collateral are irrevocable and powers coupled with an interest.

(j) <u>Modification</u>. This Agreement may not be modified or amended other than by an agreement in writing signed by Borrower and Lender.

(k) <u>Headings</u>. Article and Section headings used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

(l) <u>Severability</u>. If any provision of this Agreement is held illegal or unenforceable, the validity of the remaining provisions shall not be affected.

(m) <u>Lender's Expenses</u>. Borrower agrees to promptly pay all reasonable costs, charges and expenses incurred following the Filing Date by Lender Agent (including, without limitation, reasonable costs of collection, court costs and reasonable and documented attorneys' fees and disbursements) in connection with the enforcement, exercise, or monitoring of Lender's or Lender Agent's rights under this Agreement.

(n) <u>USA PATRIOT Act Notice</u>. Lender hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act, it is required to obtain, verify and record information that identifies Borrower which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the USA PATRIOT Act.

DOCS_SF:92776.6 42335/001

[signature page follows]

DOCS_SF:92776.6 42335/001

IN WITNESS WHEREOF, Borrower, intending to be legally bound, has duly executed and delivered this Agreement on the date first written above.

<div style="margin-left: 40%;">

**BORROWER**:

WRAP MEDIA, INC.,
a Delaware corporation, as debtor and debtor-in-possession

By: _____
    Name: _____
    Title: _____

WRAP MEDIA, LLC.,
a Delaware limited liability company, as debtor and debtor-in-possession

By: _____
    Name: _____
    Title: _____

**LENDER**:

See **<u>Schedule A</u>** attached.

</div>

## <u>SCHEDULE A</u>

<u>LENDER</u>:


Wrap Media Holdings, LLC

        By:    Innovation Investments, LLC
        Its:    Sole Manager


            By:_____
            Name: Eric Greenberg
            Its: President

Aggregate Principal Amount of Advances: up to $500,000




_____


By:_____
Name: _____
Title:_____

Aggregate Principal Amount of Advances: up to $[_____]




_____


By:_____
Name: _____
Title:_____

Aggregate Principal Amount of Advances: up to $[_____]



***Lender reserves the right to revise, modify, or amend this Schedule A in its discretion, which may include the addition or removal of lenders.