

Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Proposed Counsel for Debtors

Signed and Filed: January 20, 2017

_/s/ Hannah L. Blumenstiel_
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>WRAP MEDIA, LLC<br><br>            Debtor. | Case No. 16-31325 HLB<br>Chapter 11 |
| In re<br><br>WRAP MEDIA, INC.<br><br>            Debtor. | Case No. 16-31326 HLB<br>Chapter 11<br><br>Jointly Administered |
| ☐ Affects LLC<br>☐ Affects Inc.<br>☒ Affects BOTH DEBTORS | |

**AMENDED INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, AND (IV) SCHEDULING A FINAL HEARING ON THE DEBTORS' MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS**

This matter is before the Court on the motion (the "Motion") filed on December 12, 2016, by the above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Case") requesting entry of an interim order (the "Initial Interim Order"), and following a final hearing, a final order (the "Final Order"), authorizing and approving the obtaining

of credit and permitting the use of cash collateral pursuant to Sections 363 and 364 of the Bankruptcy Code. On December 12, 2016, the Court entered the Initial Interim Order (Docket No. 36) permitting the Debtors to borrow up to $350,000, to avoid immediate and irreparable harm.

On January [13], 2017, the Debtors filed a supplement to the Motion (the "Supplement") requesting (a) authority to borrow additional amounts on an interim basis pursuant to an *Amended and Restated Secured Super-Priority Debtors-in-Possession Loan Agreement* dated as of January 18, 2017 (as it may be further amended or supplemented, the "DIP Loan Agreement"), attached as Exhibit A to the Supplement, and (b) a continuance of the final hearing scheduled for January 18, 2017, to consider entry of an order approving the DIP Facility and authorizing the use of Cash Collateral on a final basis as set forth in the Motion. The Supplement also contained, attached as Exhibit B, an updated cash budget for the period from December 15, 2016, through February 28, 2017. The Motion, as supplemented by the Supplement, requests entry of an amended interim order (this "Amended Interim Order"), among other things:

(1) Authorizing and approving, pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for Debtors, as borrower, to obtain postpetition financing up to the principal amount of $3,000,000 (the "DIP Facility"), of which up to the principal amount of $1,000,000 (less amounts previously advanced under the Initial Interim Order), will be available under this Amended Interim Order, from Wrap Media Holdings, LLC or its designee, as lead lender and lender agent ("Lead Lender" and "Lender Agent"), and other lenders to be identified (together with Lead Lender, "Lender"), pursuant to the terms of the DIP Loan Agreement[1], to: (A) fund general operating needs of the Debtors pursuant to a Budget, (B) pay certain expenses of administration of the Case, and (C) pay amounts owed to Lender under the DIP Loan Agreement (obligations under the DIP Facility, the Initial Interim Order and this Amended Interim Order, including, without limitation, principal, interest, fees and expenses, and other obligations and amounts due from time to time under the DIP Loan Agreement, shall be referred to hereinafter collectively as the "Postpetition Indebtedness");

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Loan Agreement.

(2) Authorizing and empowering the Debtors to execute and enter into the DIP Loan Agreement and to perform such other and further acts as may be required in connection with the DIP Loan Agreement;

(3) providing, pursuant to section 364(c) of the Bankruptcy Code, that the obligations under the DIP Facility:

a. shall have priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, or 1114 of the Bankruptcy Code or otherwise, which allowed superpriority claims of Lender (the "DIP Superpriority Claims") shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors as provided herein, provided, however, that the DIP Superpriority Claims shall be subject to the Carve-Out (as defined below);

b. shall be secured by a valid, binding, continuing, enforceable, fully-perfected senior lien on, and security interest in, the "Senior Collateral" consisting of (a) the Intellectual Property (as defined in the DIP Loan Agreement), subject to the SVB Replacement Lien, (b) the Control Account (as defined in the DIP Loan Agreement), and (c) any other prepetition and postpetition property of the Debtors, whether now existing or hereafter acquired, that is not subject to a valid, perfected and unavoidable lien in existence immediately prior to the Petition Date, in each case subject to the Carve-Out;

c. shall be secured by a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in, the "Junior Collateral" consisting of (a) any Collateral that is subject to a valid, perfected and unavoidable lien under the SVB Indebtedness (as defined in the DIP Loan Agreement), and (b) any other prepetition and postpetition property of the Debtors, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date (as defined below), or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, which security interests and

liens in favor of Lender shall be junior to such valid, perfected and unavoidable liens, in each case subject to the Carve-Out (the "DIP Collateral" consists of the Senior Collateral and the Junior Collateral);

          d.    authorizing the Debtors pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code to use Cash Collateral (as defined under section 363 of the Bankruptcy Code) in which Lender asserts an interest as a result of the DIP Facility; and

          (4)    scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") before this Court to consider entry of the Final Order approving the DIP Facility and authorizing the use of Cash Collateral, all on a final basis, as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and Supplement before this Court to consider entry of this Amended Interim Order having been provided by the Debtors, and a further interim hearing having been held on January 18, 2017, and the Court having considered of all the pleadings filed with this Court, including any objections to the relief requested in the Motion and the Supplement that were not withdrawn or resolved at or prior to the hearing; and upon the record made by the Debtors at the hearing and the Declarations of Eric Greenberg and Douglas Abrams in support of the Motion, and after due deliberation and consideration and good and sufficient cause appearing therefore;

**IT IS HEREBY FOUND**:

    A.    On December 10, 2016 (the "Petition Date"), the Debtors commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

    B.    No request for the appointment of a trustee or examiner has been made in this Case. No official committee of unsecured creditors has yet been appointed or designated by the U.S. Trustee's office.

    C.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. The Debtors' business has an immediate need for further financing under the DIP Facility and use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors and to the success of the Case. Without such credit and use of Cash Collateral, the Debtors would not be able to operate their business and the Debtors' estates would be irreparably harmed.

E. The Debtors are unable to obtain sufficient financing from sources other than Lender on terms more favorable than under the DIP Loan Agreement and all the documents and instruments delivered pursuant thereto or in connection therewith. The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without providing Lender with the benefit of the DIP Superpriority Claims and the DIP Liens as provided herein and in the DIP Loan Agreement.

F. Pending entry of the Final Order, Lender is willing to provide financing to the Debtors and/or consent to the use of Cash Collateral and other Collateral by the Debtors subject to (i) the entry of this Amended Interim Order, (ii) the terms and conditions of the DIP Loan Agreement, and (iii) findings by the Court that such interim postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such interim financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Liens, DIP Superpriority Claims, and the other protections granted pursuant to this Amended Interim Order and the DIP Loan Agreement with respect to such interim financing and use of Cash Collateral will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Amended Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Without limiting the foregoing, any advances made to the Debtors under the DIP Loan Agreement after entry

of the Initial Interim Order and prior to entry of the Final Order shall be entitled to the protections provided by section 364(e) of the Bankruptcy Code. Lender has acted in good faith in, as applicable, negotiating, consenting to and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral on an interim basis as contemplated by this Amended Interim Order and the other DIP Loan Agreement, and the reliance by Lender on the assurances referred to above is in good faith.

G. Under all the circumstances, notice of the Motion and the relief requested thereby and pursuant to the Supplement and this Amended Interim Order has been provided in accordance with Bankruptcy Rule 4001.

H. The Debtors have requested immediate entry of this Amended Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this Amended Interim Order, the Debtors' business, properties and estates will be immediately and irreparably harmed.

I. The ability of the Debtors to finance their operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, and use of Cash Collateral are in the best interests of the Debtors and their creditors and estates.

J. Based upon the record presented by the Debtors to this Court: (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors and Lender, and any loans, credit, use of Cash Collateral or other financial accommodations set forth in this Amended Interim Order shall be deemed to have been extended, issued, made, or consented to, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. <u>Disposition</u>. The Motion, as supplemented by the Supplement, is granted as set forth in this Amended Interim Order. Any objections that have not previously been withdrawn or

resolved at the hearing are hereby overruled. This Amended Interim Order shall immediately become effective upon its entry.

    2. <u>Authorization to Borrow Under the DIP Facility</u>. As of the date hereof, Debtors and Lender are deemed to have executed and delivered all documents comprising the DIP Loan Agreement and the requirements of the DIP Loan Agreement shall be binding on the Debtors. Provided that the Debtors are not in default under the terms of this Amended Interim Order or the DIP Loan Agreement, the Debtors are authorized to borrow under the DIP Facility from Lender, in accordance with the terms and conditions of the DIP Loan Agreement and in the amounts and at the times (subject to applicable variances) set forth in the updated Budget attached hereto as **Exhibit A** (the "<u>Updated DIP Budget</u>"), up to $1,000,000 in an aggregate principal amount of advances (less amounts previously advanced under the Initial Interim Order), and to use amounts borrowed under the DIP Facility to fund the Debtors' working capital, administrative expenses, and other general corporate needs pending the Final Hearing in accordance with the terms of the DIP Loan Agreement and this Amended Interim Order.

    3. <u>DIP Superpriority Claims</u>. For the Postpetition Indebtedness, Lender is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the payment of the Carve-Out, the allowed DIP Superpriority Claims, which claims shall be payable from and have recourse to, in addition to the DIP Collateral, any unencumbered prepetition or postpetition property of the Debtors whether now existing or hereafter acquired. The DIP Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance other than as provided herein, for all purposes in the Case and any successor case.

    4. <u>DIP Liens</u>. As security for the repayment of the Postpetition Indebtedness arising under the DIP Loan Agreement, pursuant to sections 364(c)(2) and (c)(3) of the Bankruptcy Code, Lender is hereby granted the liens on the DIP Collateral (the "<u>DIP Liens</u>"). The DIP Liens are valid, binding, enforceable and fully perfected as of the date hereof.

7
Case: 16-31325   Doc# 81   Filed: 01/20/17   Entered: 01/20/17 12:47:09   Page 7 of 17

5. Carve-Out.

(a) As used in this Amended Interim Order, the term "Carve-Out" shall mean a carve-out for (i) allowed, accrued, but unpaid professional fees and expenses of the Debtors and any official committee of unsecured creditors appointed in the Case, in each case as set forth in the Updated DIP Budget (on a cumulative basis) incurred prior to an Event of Default (as defined in the DIP Loan Agreement) not otherwise cured by the Debtors or waived by Lender, (ii) allowed, accrued, but unpaid professional fees and expenses of the Debtors or any subsequently appointed chapter 7 trustee incurred in the Case after an Event of Default (that is not waived or cured) not to exceed an amount equal to $35,000, and (iii) the payment of fees pursuant to 28 U.S.C. § 1930; provided that the Carve-Out, any Cash Collateral and any proceeds of the DIP Facility may not be used to prosecute, contest or otherwise challenge the validity, perfection, priority, extent, or enforceability of the DIP Facility, or the liens securing the DIP Facility, or any claims against Lender in its capacity as such.

(b) Notwithstanding anything herein to the contrary, no Collateral, Cash Collateral, amounts borrowed under the DIP Loan Agreement, proceeds of any of the foregoing, or any portion of the Carve-Out shall include, apply to, or be available for, any fees or expenses incurred by any party, including the Debtors or any committee, in connection with (A) the initiation or prosecution of (or soliciting or encouraging other parties to assert) any claims, causes of action, adversary proceedings, or other litigation against Lender in its capacity as such, or (B) any avoidance actions against Lender in its capacity as such. The foregoing shall not be construed as consent to the allowance of any estate professional fees and shall not affect the right of the Debtors, Lender, or other parties in interest to object to the allowance and payment of any estate professional fees. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, reduce any of the Debtors' obligations owed to Lender.

6. Adequate Protection to SVB. Solely to the extent of any diminution in the value of the interests of SVB in the Junior Collateral, SVB shall have, pursuant to sections 361 and 363(e) of the Bankruptcy Code, an additional security interest and lien in the Intellectual Property (the "SVB Replacement Lien"), which lien shall (a) be senior to the DIP Liens with respect to the

Intellectual Property (but shall be junior to the DIP Liens with respect to the remaining Senior Collateral, including the Control Account), and (b) be junior and subordinate to the Carve Out.

7. <u>Section 506(c) and 552(b) Waivers</u>. Effective upon entry of a Final Order providing for such relief, with the exception of the Carve-Out and except as otherwise permitted by the DIP Facility or this Amended Interim Order, neither the DIP Collateral nor Lender, nor any of its claims, shall be subject to any costs or expenses of administration that have been or may be incurred at any time, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, by the Debtors or any other party in interest without the prior written consent of Lender, and no such consent shall be implied from any action, inaction, or acquiescence by any party, including, but not limited to, funding of the Debtors' ongoing operations by Lenders. Effective upon entry of a Final Order providing for such relief, the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived with respect to the DIP Collateral. Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

8. <u>Authorization to Use Cash Collateral.</u> Upon entry of this Amended Interim Order and during the term hereof, the Debtors are authorized pursuant to sections 105, 361, 363, 541 and 553 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, to use Cash Collateral in which Lender maintains an interest in accordance with the Updated DIP Budget. The Debtors' authority to use Cash Collateral, including any proceeds of the DIP Loan Agreement contained in the Collateral Account or otherwise, shall cease immediately upon the giving of notice by the Lender of the occurrence of an Event of Default (as defined in the DIP Loan Agreement), except as may otherwise be ordered by the Bankruptcy Court.

9. <u>Reimbursement of Fees and Expenses</u>. Upon entry of this Amended Interim Order, the Debtors shall reimburse Lender Agent in accordance with the terms of the DIP Loan Agreement for its reasonable costs and fees, provided however, that the Debtors, upon receipt of invoices from Lender Agent, shall provide copies of the same to the U.S. Trustee and counsel for any committee. None of such costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any

such payment shall be required to file with respect thereto any interim or final fee application with the Court; <u>provided</u>, <u>however</u>, that the Court shall have jurisdiction to determine any dispute regarding the reasonableness of any such costs, fees, charges and expenses. The payment of such fees and costs in amounts in excess of those set forth in the Updated DIP Budget will not result in a breach of the DIP Loan Agreement.

10. <u>Additional Perfection Measures</u>. Lender shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Loan Agreement and this Amended Interim Order (including, without limitation, taking possession of or obtaining control over any of the DIP Collateral, or taking any action to have security interests or liens noted on certificates of title or similar documents). Lender's DIP Lien in the Control Account shall be deemed enforceable and perfected notwithstanding the absence of an agreement for control of such account within the meaning of the UCC. Notwithstanding the foregoing, Lender may, in its discretion, file this Amended Interim Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security interests, and mortgages, without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, and all such documents shall be deemed to have been filed or recorded or other action taken on the Petition Date, with the priorities set forth herein; <u>provided</u>, that the failure of Lender to file any such financing statement, mortgage, deed of trust, notice of lien or other instrument, or to otherwise confirm perfection of such liens, security interests or mortgages or make any other such request shall not affect either the perfection or priority of the DIP Liens.

11. <u>Remedies Upon Event of Default</u>.

(a) <u>Acceleration</u>. After the occurrence and continuance of an Event of Default (as defined in the DIP Loan Agreement) and upon five (5) Business Days' written notice following such Event of Default from Lender to the Debtors, if the Debtors have not within such five (5) day period either (A) cured any such Event of Default; or (B) obtained an order from the Court excusing Debtors' performance or otherwise determining that no such Event of Default has occurred,

Lender shall have the right to declare the entire unpaid principal amount of any outstanding advances under the DIP Facility, together with all accrued but unpaid interest and any unpaid fees and expenses incurred by Lender, immediately due and payable. The Debtors waive presentment, protest, demand, notice of dishonor and all other requirements of any kind. Lender's failure to exercise any right or remedy under the DIP Facility or acceptance of partial or delinquent payments, shall not be a waiver of any obligation of the Debtors or right of Lender, or constitute Lender's waiver of any other default subsequently occurring.

(b) <u>Automatic Stay</u>. After the occurrence and continuance of an Event of Default (as defined in the DIP Loan Agreement) and upon seven (7) Business Days' written notice following such Event of Default from Lender to the Debtors (which the Debtors shall file with the Court and serve on those parties that have requested special notice in the Case), if the Debtors or any other party in interest has not within such seven (7) day period otherwise obtained an order from the Court maintaining the automatic stay, the automatic stay provided in Section 362 of the Bankruptcy Code shall be deemed modified and Lender shall have the right to exercise any of the remedies under the DIP Facility loan documents, including any rights and remedies provided herein and the right to realize on the DIP Collateral without further relief or order of this Court.

(c) <u>Binding Effect</u>. The provisions of this Amended Interim Order shall be binding upon and inure to the benefit of Lender, the Debtors and their respective successors and assigns, including any trustee hereafter appointed for the estates of either of the Debtors, whether in the Case or any successor case, including the conversion of the Case to a case under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Amended Interim Order.

12. <u>Survival</u>. The provisions of this Amended Interim Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in the Case (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code), (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting the Case to a chapter 7 case unless permitted under the DIP Loan Agreement, or (d) to the maximum extent permitted by law, dismissing the Case unless permitted

under the DIP Loan Agreement, and notwithstanding the entry of any such order, the terms and provisions of this Amended Interim Order shall continue in full force and effect, and the DIP Superpriority Claims and DIP Liens granted pursuant to this Amended Interim Order and/or the DIP Loan Agreement shall continue in full force and effect and shall maintain their priority as provided by this Amended Interim Order and the DIP Loan Agreement to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash or otherwise addressed pursuant to a confirmed plan.

13. <u>Credit Bid</u>. The Lead Lender's ability to exercise its rights to credit bid the Postpetition Indebtedness authorized by this Amended Interim Order, either pursuant to a sale under Section 363 of the Bankruptcy Code or pursuant to a plan of liquidation for the Debtors, shall be subject to further order of the Court. The foregoing (a) shall be subject to reconsideration or modification at the Final Hearing, and (b) shall not diminish or affect the validity, priority, perfection or enforceability of the DIP Liens authorized by this Amended Interim Order.

14. <u>Findings of Fact and Conclusions of Law</u>. This Amended Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof.

15. <u>Controlling Effect of Order</u>. To the extent any provision of this Amended Interim Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, or the DIP Loan Agreement, the provisions of this Amended Interim Order shall control.

16. <u>Final Hearing</u>. The Final Hearing on the Motion shall be continued to March 2, 2017, at 11:00 a.m. (PST) at the United States Bankruptcy Court for the Northern District of California, Courtroom 19 on the 16th Floor of the Federal Building, 450 Golden Gate Avenue, San Francisco, California.

***** END OF ORDER *****

# EXHIBIT A

(Updated DIP Budget)

DOCS_SF:92977.2 42335/002

**Wrap Media
Short Term Cash Plan**
(As of 1/12/16)

| | 12/15/2016 | 12/31/2016 | Total Dec 2016 | 1/15/2016 | 1/31/2017 | Total Jan 2017 | 2/15/2016 | 2/28/2016 | Total Feb 2017 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Unrestricted Cash (12/10/16) | 291,248 | 215,666 | 291,248 | 246,100 | 155,334 | 246,100 | 45,086 | 34,217 | 45,086 |
| DIP Loan Proceeds | 0 | 200,000 | 200,000 | 150,000 | 150,000 | 300,000 | 250,000 | 250,000 | 500,000 |
| AR Cash Receipts | 0 | 27,000 | 27,000 | 12,749 | 30,000 | 42,749 | 50,000 | 50,000 | 100,000 |
| Payroll & Related Taxes | (73,048) | (184,604) | (257,651) | (188,777) | (181,998) | (370,775) | (165,998) | (181,998) | (347,996) |
| Employee Health Benefits | 0 | 0 | 0 | 0 | (25,000) | (25,000) | (20,000) | 0 | (20,000) |
| Engineering Expenses | 0 | (770) | (770) | (14,240) | (10,250) | (24,490) | (18,250) | (11,250) | (29,500) |
| Sales & Marketing Expenses | (1,305) | (4,136) | (5,441) | (18,000) | (10,000) | (28,000) | (40,500) | (7,500) | (48,000) |
| Admin & Office Expenses | (1,229) | (7,057) | (8,286) | (23,998) | (50,000) | (73,998) | (57,621) | (15,000) | (72,621) |
| Legal Fees | 0 | 0 | 0 | 0 | (12,000) | (12,000) | 0 | (12,000) | (12,000) |
| Interest Payments | | | 0 | (8,500) | (1,000) | (9,500) | (8,500) | (2,500) | (11,000) |
| Ending Unrestricted Cash | 215,666 | 246,100 | 246,100 | 155,334 | 45,086 | 45,086 | 34,217 | 103,969 | 103,969 |
| Cash In | 0 | 227,000 | 227,000 | 162,749 | 180,000 | 342,749 | 300,000 | 300,000 | 600,000 |
| Cash Out | (75,582) | (196,566) | (272,148) | (253,515) | (290,248) | (543,763) | (310,869) | (230,248) | (541,117) |
| Net Change in Unrestricted Cash | (75,582) | 30,434 | (45,148) | (90,766) | (110,248) | (201,014) | (10,869) | 69,752 | 58,883 |
| Total Non-Payroll OPEX Costs | (2,534) | (11,963) | (14,497) | (56,238) | (82,250) | (138,488) | (116,371) | (45,750) | (162,121) |

**Prior Plan submitted to Courts
Short Term Cash Plan**
(As of 12/10/16)

| | 12/15/2016 | 12/31/2016 | Total Dec 2016 | 1/15/2016 | 1/31/2017 | Total Jan 2017 |
|---|---|---|---|---|---|---|
| Beginning Unrestricted Cash (12/10/16) | 291,248 | 179,570 | 291,248 | 142,559 | 18,289 | 142,559 |
| DIP Loan Proceeds | 0 | 200,000 | 200,000 | 150,000 | 0 | 150,000 |
| AR Cash Receipts | 0 | 30,000 | 30,000 | 40,000 | 40,000 | 80,000 |
| Payroll & Related Taxes | (91,678) | (183,710) | (275,389) | (163,710) | (203,710) | (367,421) |
| Employee Health Benefits | 0 | 0 | 0 | (30,000) | 0 | (30,000) |
| Engineering Expenses | 0 | (14,000) | (14,000) | (12,500) | (38,500) | (51,000) |
| Sales & Marketing Expenses | (10,000) | (20,000) | (30,000) | (45,000) | (20,000) | (65,000) |
| Admin & Office Expenses | (10,000) | (37,300) | (47,300) | (54,060) | (21,300) | (75,360) |
| Legal Fees | 0 | (12,000) | (12,000) | 0 | (12,000) | (12,000) |
| Interest Payments | | | | (9,000) | (1,000) | (10,000) |
| Ending Unrestricted Cash | 179,570 | 142,559 | 142,559 | 18,289 | (238,222) | (238,222) |
| Cash In | 0 | 230,000 | 230,000 | 190,000 | 40,000 | 230,000 |
| Cash Out | (111,678) | (267,010) | (378,689) | (314,270) | (296,510) | (610,781) |
| Net Change in Unrestricted Cash | (111,678) | (37,010) | (148,689) | (124,270) | (256,510) | (380,781) |
| Total Non-Payroll OPEX Costs | (20,000) | (83,300) | (103,300) | (111,560) | (91,800) | (203,360) |

**Wrap Media, LLC - Operating Plan**

| Ending Cash Projection | Cash Receipts | DiP Loan | SVB & DiP Loan Interest | Non Payroll Expected Costs | Health Benefits | Payroll, Taxes & Commissions | Gross Burn | Ending Unrestricted Cash | DiP Loan Bal |
|---|---|---|---|---|---|---|---|---|---|
| 12/15/2016 | | | | | | | | 215,666 | 0 |
| 12/31/2016 | 27,000 | 200,000 | | (2,534) | | (73,048) | (75,582) | 246,100 | 200,000 |
| 1/15/2016 | 12,749 | 150,000 | (8,500) | (11,963) | | (184,604) | 30,434 | 155,334 | 350,000 |
| 1/31/2016 | 30,000 | 150,000 | (1,000) | (56,238) | (25,000) | (188,777) | (90,766) | 45,086 | 500,000 |
| 2/15/2016 | 50,000 | 250,000 | (8,500) | (82,250) | (20,000) | (181,998) | (110,248) | 34,217 | 750,000 |
| 2/28/2016 | 50,000 | 250,000 | (2,500) | (116,371) | | (165,998) | (10,869) | 103,969 | 1,000,000 |
| 3/15/2016 | 50,000 | | (8,500) | (45,750) | (20,000) | (181,998) | 69,752 | (171,900) | 1,000,000 |
| 3/31/2016 | 50,000 | | (5,000) | (131,371) | | (165,998) | (275,869) | (347,648) | 1,000,000 |
| 4/15/2016 | 50,000 | | (8,500) | (38,750) | (20,000) | (181,998) | (175,748) | (603,517) | 1,000,000 |
| 4/30/2016 | 50,000 | | (5,000) | (111,371) | | (165,998) | (255,869) | (783,265) | 1,000,000 |
|  |  |  |  | (42,750) |  | (181,998) | (179,748) |  |  |

**Unrestricted Cash reconciliation**

| | |
|---|---|
| First Republic Checking | 200 |
| SVB | 100 |
| Bank of the West | 231,448 |
| Other | 472,500 |
| Exclude: Letter of Credit | (422,000) |
| Exclude: CD to secure Amex cards | (50,000) |
| Outstanding Items | (76,714) |
| **Cah end of Period 1/15** | 155,334 |
| | 0 |

**Go forward estimated monthly burn**

| | | |
|---|---|---|
| Payroll & Taxes | (331,996) | |
| Commissions | (16,000) | |
| Health Benefits | (20,000) | |
| SVB Loan Int | (8,500) | |
| DiP Loan Int | (1,000) | |
| Non Payroll OPEX Costs | (155,121) | See Below |
| Monthly Burn | **(532,617)** | |
| **Non-Payroll OPEX Costs** | | |
| Engineering Expenses | 24,500 | |
| Sales & Mrtk Expenses | 48,000 | |
| Admin & Office Expenses | 70,621 | |
| Legal Fees | 29,000 | |
| Unpaid Legal Fees | (17,000) | |
| | 155,121 | See Detail |

| Outstanding Items / Adjustments | 12/15/2016 | 12/31/2016 | 1/15/2016 | 1/31/2017 | 2/15/2017 | 2/28/2017 | 3/15/2017 | 3/31/2017 |
|---|---|---|---|---|---|---|---|---|
| DiP Funding | | | 150,000 | | | | | |
| Payroll | | | (166,238) | | | | | |
| SVB Interest | | | (8,500) | | | | | |
| Cash Receipts | | | 0 | | | | | |
| Bill.com Payments Processed | | | (16,518) | | | | | |
| Other AP Payments | | | (29,958) | | | | | |
| USPTO | | | (5,500) | | | | | |
| Total | 0 | 0 | (76,714) | 0 | | | | |

**Wrap Media**
**Non-Headcount Related Costs**

| Engineering Expenses | Full Month | Actual Dec 15 Pymt | Dec 31 Pymt | Jan 15th Pymts | Jan 31 Pymts | Feb 15th Pymts | Feb 28th Pymts | Mar 15th Pymts | Mar 31 Pymts | Apr 15th Pymts | Apr 30 Pymts | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Abstracta | - | | | 2,880 | - | | - | | - | | - | R&D consultants |
| Production Design Contractors | 7,500 | | | 560 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | Design Conultants |
| Eammune/Infosec | 12,000 | | | 8,400 | | 12,000 | | 12,000 | | 12,000 | | Security/enterprise-readiness consultants |
| Security Auditors | - | | | 2,400 | 4,000 | | 5,000 | 5,000 | | | | |
| EPC IT Solutions | - | | 770 | | - | | - | | - | | - | IT consulting |
| Other Engineering & IT | 5,000 | | | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | R&D & ITconsulting |
| **Total Engineering Expenses** | **24,500** | **-** | **770** | **14,240** | **10,250** | **18,250** | **11,250** | **23,250** | **6,250** | **18,250** | **6,250** | |
| **Sales & Marketing Expenses** | | | | | | | | | | | | |
| MediaLink | 33,000 | | | 18,000 | | 33,000 | | 33,000 | | 33,000 | | Marketing, lead-gen |
| Travel & Related Expenses (in CC Payments) | 15,000 | 1,305 | | | 10,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | Travel & Related Expenses |
| Sales Consulants | - | | 4,136 | - | - | - | - | - | - | - | - | Sales Consultant |
| **Total Sales & Marketing Expenses** | **48,000** | **1,305** | **4,136** | **18,000** | **10,000** | **40,500** | **7,500** | **40,500** | **7,500** | **40,500** | **7,500** | |
| **Admin & Office Expenses** | | | | | | | | | | | | |
| 275 Sacramento Street, LLC | 2,000 | | | | 2,000 | | 2,000 | | 2,000 | | 2,000 | Electricity |
| Beautifull | 3,000 | | 1,306 | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | Cafeteria |
| Canteen Refreshment Services | - | | | - | - | - | - | - | - | - | - | Cafeteria |
| Court Admin - US Trustee Fee (per qtr) | | | | | 2,000 | | | | | | 4,000 | US Trusteee Fee |
| Credit Card Pymts (See Below for charges) | 40,121 | | | 10,905 | 25,000 | 40,121 | | 40,121 | | 40,121 | | Credit Card Chages |
| Kranz & Associates | 14,000 | | 5,000 | 5,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | Finance & Accounting Consultant |
| Lender Admin Fees | | | | | 5,000 | | | 10,000 | | | | Admin fees for Lender |
| Level 3 Communications | 1,500 | 1,229 | | 1,229 | | 1,500 | | 1,500 | | 1,500 | | Internet Connection |
| Misc | 5,000 | | 593 | 1,206 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | Misc Office Admin |
| Office Admin Temp | - | | | - | - | - | - | - | - | - | - | Clerical and Admin Work |
| Rust / Omni | - | | | | 5,000 | | 2,000 | | | | | Internet Connection |
| The Fruit Guys | - | | 158 | 158 | - | - | - | - | - | - | - | Cafeteria |
| USPTO | 5,000 | | | 5,500 | | 5,000 | | 5,000 | | | | Paten Filing Fee, 4 payments (Jan, Feb, M |
| **Total Admin & Office Expenses** | **70,621** | **1,229** | **7,057** | **23,998** | **50,000** | **57,621** | **15,000** | **67,621** | **13,000** | **52,621** | **17,000** | |
| **Legal Fees** | | | | | | | | | | | | |
| Baker McKenzie | - | | | | | | | | | | | International Legal |
| Beyer Law Group LLP | 5,000 | | | | | | | | | | | IP Legal |
| Fenwick & West, LLP | 5,000 | | | | | | | | | | | General Legal |
| Harvey Siskind | 2,000 | | | | | | | | | | | IP Legal |
| Law Office of Erik Riegler | 5,000 | | | | | | | | | | | General Legal |
| Pachulski Stang Ziehl & Jones LLP | 12,000 | | | | 12,000 | | 12,000 | | 12,000 | | 12,000 | Trustee Legal |
| South Gate | - | | | | | | | | | | | International Legal |
| **Total Legal Fees** | **29,000** | **-** | **-** | **-** | **12,000** | **-** | **12,000** | **-** | **12,000** | **-** | **12,000** | |
| **Total Non-Headcount Related Costs** | **172,121** | **2,534** | **11,963** | **56,238** | **82,250** | **116,371** | **45,750** | **131,371** | **38,750** | **111,371** | **42,750** | |

**Credit Card Charges**

| | Budget (on CC) | Dec Payments | Jan Payments To date | Feb Payments | Mar Payments | Apr Payments | Comments |
|---|---|---|---|---|---|---|---|
| 8X8, INC. | 500 | 346 | 349 | | | | Telecom |
| Adobe Systems | 625 | 625 | | | | | SW tool subscription |
| AT&T | 500 | 10 | | | | | Telecom |
| Atlassian | 930 | 1,029 | | | | | SW tool subscription |
| Amazon Web Services | 22,000 | 23,371 | 21,505 | | | | Bandwidth/hosting |
| BambooHR | 200 | 180 | | | | | SW tool subscription |
| Bill.com, Inc | 100 | 151 | | | | | SW tool subscription |
| Bohemian Coding | 99 | | | | | | SW tool subscription |
| Browser Stack | 39 | 39 | | | | | SW tool subscription |
| Chatlio | 49 | | | | | | SW tool subscription |
| Cirrus | 84 | 84 | 28 | | | | SW tool subscription |
| CloudCraft | 49 | 49 | | | | | SW tool subscription |
| CLOUDFLARE | 20 | 20 | | | | | SW tool subscription |
| Easy DNS | 75 | | | | | | Bandwidth/hosting |
| Eden | - | 1,096 | 280 | | | | Office/meal setup/take-down |
| Elev.io | 79 | 79 | | | | | SW tool subscription |
| Expensify | 100 | 117 | 81 | | | | SW tool subscription |
| EZTexting | 100 | 300 | 50 | | | | SW tool subscription |
| FEDEX | 500 | 129 | | | | | Postage |
| First Republic Bank | 197 | | | | | | Bank Fees |
| GETTY IMAGES | 399 | 399 | | | | | SW tool subscription |
| GitHub | 300 | 300 | | | | | SW tool subscription |
| Google | 600 | 653 | 597 | | | | SW tool subscription |
| Gum | 198 | | | | | | SW tool subsciption |
| Harvest | 149 | 149 | | | | | SW tool subscription |
| Intuit | 40 | 40 | 40 | | | | SW tool subscription |
| iStock | 170 | | | | | | SW tool subscription |
| Jfrog | 98 | 98 | | | | | SW tool subscription |
| LeapFin | 500 | 500 | | | | | SW tool subscription |
| Misc Charges | 1,000 | 336 | | | | | Misc |
| Motion.ai | 50 | | | | | | SW tool subscription |
| New Relic | 2,700 | 2,700 | | | | | SW tool subscription |
| Office Supplies / Cafeteria | 1,500 | | 664 | | | | Office Supplies |
| PagerDuty | 885 | 826 | | | | | SW tool subscription |
| Optimizley | 400 | 399 | | | | | SW tool subscription |
| Pingdom | 15 | 15 | | | | | SW tool subscription |
| SHUTTERSTOCK, INC | 199 | 199 | | | | | SW tool subscription |
| Slack | 400 | 54 | | | | | SW tool subscription |
| SpeedCurve | 45 | 43 | | | | | SW tool subscription |
| Status Page | 99 | | | | | | SW tool subscription |
| Sumome | 100 | | | | | | SW tool subscription |
| Travel Related (in Sales Budget above) | | 947 | | | | | |
| Twilio | 300 | 300 | | | | | SW tool subscription |
| Typeform | 70 | 70 | | | | | SW tool subscription |
| Verizon | 958 | | | | | | Telecom |
| Zuora | 2,700 | | | | | | SW tool subscription |
| **Total Credit Card Charges** | **40,121** | **0** | **35,653** | **0** | **23,594** | **0** | **0** | **0** | **0** | **0** | **0** |

March)